JOHN HARWARD v. W. C. DAVENPORT, Sheriff, Appellant.

**Estoppel:** Hogs were sold on execution against a son who lived on his father's farm, which he assisted in managing, and where the property was located. The father owned them, but had authorized the son to execute a chattel mortgage in them, which he did, reciting that he himself was owner, and the mortgage was recorded There was no evidence that the execution in the son's name was authorized by the father, who brought replevin against the purchaser. *Held,* no estoppel.

SAME. A statement made by the owner of property indicating its ownership by another is not available to establish an estoppel in favor of one who did not know of such statement at the time he dealt with the property.

**Replevin:** JUDGMENT: *Scope of action.* Under Code, 1873, section 3239, providing that the right of plaintiff in replevin in the property shall be designated by the judgment, and, if he is not in possession, then it is to find the value of his right, a money judgment in plaintiff's favor for the value of the property, less the amount of the chattel mortgages to which it was subject, is proper.

SAME. The interest of plaintiff in the proceeds of a sale of property under execution, after the payment of mortgages held by the defendant, may be determined in an action to recover the possession of specific personal property unlawfully seized under execution, although defendant was entitled to the possession of the property when the action was commenced, by virtue of the mortgages.

**Plea and Proof:** VARIANCE: *Replevin.* Under Code, 1873, section 2686, that no variance shall be deemed material unless it misleads the adverse party to his prejudice, and section 2729, that a party shall not be compelled to prove more than the relief asked for or a lower degree included therein, proof that a plaintiff in replevin is the owner of the property, subject to chattel mortgages in favor of third persons, is not a fatal variance from an allegation that he is the absolute and unqualified owner thereof.

**Instructions.** An instruction to find an estoppel if the plaintiff "knowingly and wantonly suffered and permitted" certain facts to be held out is not misleading as given, though the word "wantonly" alone would require too great a culpability.

**VERDICT.** Under a charge that plaintiff in replevin must prove "absolute" ownership of the property, a verdict in his favor on

evidence of ownership subject to a chattel mortgage is not contrary to the instructions, where, though inaccurate, the word "absolute" was not so used as to mislead the jury.

**Appeal:** REVIEW: *Trivial errors.* Trivial errors in the admission or rejection of evidence will not work a reversal, where the controlling facts are so fully established as to leave no question of the justice of the verdict.

DEEMER, C. J., dissenting.

*Appeal from Woodbury District Court.*—HON. JOHN F. OLIVER, Judge.

FRIDAY, MAY 20, 1898.

ACTION at law to recover the possession of specific personal property. There was a trial by jury and a verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*Shull & Farnsworth* for appellant.

*Sullivan & McMaster* for appellee.

ROBINSON, J.—On the seventeenth day of February, 1896, the defendant, as sheriff, levied upon sixty-two hogs, an execution issued on a judgment rendered by the district court of Woodbury county in favor of Tolerton & Stetson Company and against M. E. Harward, and on the fourteenth day of the next month sold them by virtue of the execution. This action was commenced in February, 1896, to recover the possession of the hogs. The petition alleges that the plaintiff is the absolute and unqualified owner of the hogs, and demands judgment for their return or for their value, and for damages and costs. The jury found specially that the plaintiff was the owner of the hogs when they were taken by the defendant, but that the latter was entitled to the possession of them by virtue of two chattel mortgages; that the value of his interest in the property was one hundred and forty-eight dollars and thirteen cents; and

that the value of the property was three hundred and nine dollars and twenty cents. The plaintiff elected to take a judgment for the value of his interest, and judgment was rendered in his favor for one hundred and sixty-one dollars and seven cents, with interest and costs.

I. The evidence authorized the jury to find that the hogs in question were, at the time the levy upon them was made, owned by the plaintiff, subject to two mortgages thereon which he had authorized his son M. E. Harward to execute. The defendant contends that the plaintiff is estopped to claim ownership as against the Tolerton & Stetson Company because he had authorized his son to execute the mortgages. They were executed in the name of the son, and were recorded before the levy was made. One of them was given on the twentieth day of December, 1895, to Mrs. E. E. Huntley, and described the property mortgaged as "seventy head of hogs, now being fattened by me on the farm of John Harward, in Lakeport township, Woodbury county. * * *" The mortgage also contained the following: "It being my intention to mortgage all property of the respective kinds above described that I now own, the same being free from incumbrance, and in my possession on farm of John Harward, in Lakeport township. * * *" The second mortgage was executed a week later to Davis & Co., and described the property mortgaged as "about seventy head of hogs and pigs, being all the hogs and swine owned by me and in my possession on farm known as 'Harward Farm,' in Lakeport township, being the premises now occupied by me, subject to a mortgage given to Mrs. E. E. Huntley. * * * The above-described property is owned by me free from all incumbrance, and now in my possession on premises described above." The plaintiff owned and carried on

the farm on which the hogs were kept before they were taken by defendant. M. E. Harward, known as Mike, worked for his father by the month, and was active in the management of the farm, in caring for the stock, and in transacting business for his father, who was more than seventy years of age, in poor health, and unable to transact much of his business. The mortgage to Mrs. Huntley was given to secure a debt which the father owed, and the mortgage to Davis & Co. was given to secure an indebtedness owed by both father and son. The father told Mike to execute mortgages on the hogs to secure those claims, but it does not appear that any direction was given as to the name or form in which either should be executed, and it does not appear that the plaintiff knew that they stated that Mike was the owner of the property. The charge of the district court, in referring to the estoppel claimed by the defendant, authorized the jury to find an estoppel established in case the plaintiff "knowingly and wantonly suffered and permitted the said M. E. Harward to hold himself out to the world as the owner of the hogs," and if Tolerton & Stetson Company would not have caused the levy in question to be made "but for the acts of the plaintiff in knowing and wantonly allowing and permitting the said M. E. Harward to represent himself as the owner of said property," and if certain other facts were proven, but not otherwise. The appellant complains of the use of the word "wantonly." "Wantonness" is defined to be "a licentious act by one man towards the person of another, without regard to his rights," and may include the element of recklessness. Bouvier Law Dictionary; Black Law Dictionary; Webster International Dictionary; 28 Am. & Eng. Enc. Law, 596. And the word "wantonly," used in that sense, would be objectionable in requiring too great a degree of culpability on the part

of the plaintiff to constitute an estoppel. Mere negligence on his part, or silence when it was his duty to speak might be sufficient. But the word "wantonly," as used in the charge, had a passive, rather than an active, significance, and could not have misled the jury as to the facts required to constitute an estoppel, and, although we do not approve the use made of the word, we do not think it could have been prejudicial. An examination of the entire record convinces us that the evidence would not have justified the jury in finding that an estoppel had been proven in favor of the defendant.

II.   The petition alleges that the plaintiff is the "absolute and unqualified owner" of the hogs in question, and it is said that the proof does not sustain the averment, for the reason that it appears without dispute that the hogs were incumbered by two mortgages when the execution was levied upon them. Subdivision 3 of section 3225 of the Code of 1873, under which this action arose, required that the petition, in an action for the recovery of specific personal property, should state "the facts constituting the plaintiff's right to present possession thereof, and the extent of his interest in the property, whether it be full or qualified ownership." It was said in *Kern v. Wilson*, 73 Iowa, 490, of this provision, that its object was "to advise the defendant of the nature of the plaintiff's claim to the property, to the end that he could intelligently defend." Section 2686 of the Code of 1873 provided that "no variance between the allegations in a pleading and the proof is to be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." And section 2729 of the same Code provided that "a party shall not be compelled to prove more than is necessary to entitle him to the relief asked for, or any

lower degree included therein.   *   *   *" If the plain-
tiff did not fully sustain the averments of his petition
respecting his ownership, the defendant was not misled
by the variance between the pleadings and the proof.
Tolerton & Stetson Company knew of two of the mort-
gages, and before the levy was made acquired the own-
ership of them. A third mortgage, executed after the
levy, is not entitled to any weight in this case. The evi-
dence showed that the plaintiff was the owner of the
hogs, although his ownership was limited by the mort-
gages. *Hubbard v. Insurance Co.*, 33 Iowa, 325, 333.
It follows from what we have said and the statute
quoted that proof that the ownership of the plaintiff
was qualified by the chattel mortgages did not estab-
lish such a variance between the pleading and the proof
as to defeat a recovery by the plaintiff. The case of
*Kern v. Wilson, supra,* relied upon by the appellant,
differs from this, in that the plaintiff in that case
attempted to prove absolute and unqualified owner-
ship by means of a chattel mortgage. See, also, *Darnall
v. Bennett,* 98 Iowa, 410.

III. The appellant contends that the verdict is
contrary to the charge of the court, because that did
not authorize a recovery by the plaintiff unless the
evidence showed that he was the "absolute
owner" of the hogs when this action was com-
menced. Complaint is also made of the charge
because the words "absolute owner" and "owner" are
sometimes used therein as meaning the same. The use
of those words was not in all instances accurate, but
was not misleading. The appellant also complains of
various rulings of the court in admitting and rejecting
evidence. In a few instances the rulings were
erroneous, but they were so clearly of trivial con-
sequence that we should not be justified in revers-
ing the judgment of the district court on account of

them nor in setting them out at length. The controlling facts were so fully established that the justice of the verdict cannot be successfully questioned. All the evidence which tended to show that the son owned the hogs, of which Tolerton & Stetson Company had knowledge when the levy was made, was the record of the two mortgages he had given, and possibly a statement made by the husband of Mrs. Huntley to the effect that the son owned the hogs. But the only ownership and possession of them which the son had was that which any employe would have of the stock of his principal on his principal's premises, which the employe was required to care for and feed. The plaintiff did not authorize his son to treat the property as his own unless it can be said that he did so for the purpose of giving the two mortgages thereon which we have described. It is true one witness testified that both father and son stated, when the mortgage to Davis & Co. was executed, that the son owned the hogs, and in so doing the witness contradicted the testimony of the plaintiff; but if the statement was made by the father, and was as claimed, it was not only ι true, but Tolerton & Stetson Company did not, ι.. ι.ar as the record shows, have any knowledge of it when the levy was made, consequently could not have relied upon it. Nothing shown by the evidence justifies the conclusion that the transactions between the father and son were designed for any fraudulent or improper purpose.

IV. The appellant complains of the refusal of the court to sustain a motion made by him to transfer the cause to the equity side of the docket, based upon the alleged ground that the answer pleaded an equitable estoppel, and of the refusal of the court to strike from the files a reply to the answer. We do not find any reason for concluding that the motion to transfer should have been sustained, and, although the reply might well

have been stricken from the files, prejudice could not have resulted from the refusal of the court to do so. The objections to these rulings and to numerous others are stated, rather than argued, and do not require any further consideration.

V.  The answer of the defendant claims that he was entitled to possess the hogs in question when this action was commenced, by virtue of the two chattel mortgages which Tolerton & Stetson Company obtained, as well as by virtue of the levy under the execution. The defendant in fact took possession of and sold the hogs under the execution, and from the proceeds of the sale paid the mortgage debts. That was done before this cause was reached for trial, and the interest of the plaintiff in the hogs then remained to be determined, and that was properly done. Code 1873, section 3239; *Hayden v. Anderson.* 17 Iowa, 158, 163; *Hibbard v. Zenor,* 82 Iowa, 505, 510; *Harvey v. Pinkerton,* 101 Iowa, 246. We do not understand the appellant to deny that the right to determine the interest of the plaintiff in the hogs existed notwithstanding the fact that he was not entitled to the possession of the property when the action was commenced. We do not find any sufficient ground for disturbing the judgment of the district court, and it is AFFIRMED.

DEEMER, C. J., dissenting.