## C. A. GEVERS, Appellant, v. THOMAS FARMER.

**Replevin:** PROOF OF TITLE: *Plea and proof.* Where, in action of replevin, plaintiff alleges that he is the owner of certain per-sonal property, he cannot recover on proof that he held property, taken from his possession by defendant on an execution, in trust for another.

**Evidence:** HARMLESS ERROR. In an action to recover possession of certain personal property, a witness was asked if he had had any coniversaton with an assignor in regard to an assignment claimed to have been part of a fraudulent scheme. *Held*, if it was erroneous for witness to answer that he had, where the conversa-tion was had after the assignment, it is without prejudice, where he did not state what was said.

**SAME.** In an action to recover possession of certain personal prop-erty which plaintiff claims by the purchase from a purchaser from an assignee for benefit of creditors, which he claims was made sub-ject to a mortgage on it at the time of the assignment, and the existence of which mortgage was not disputed, the admission of such mortgage in evidence is without prejudice.

INSTRUCTIONS: *Harmless error.* Where it clearly appears that a verdict.is not based on an erroneous instruction which was given, the cause will not be reversed, as it is error without prejudice.

*Rule applied.* An instruction, in an action of replevin, stating that if the jury find from the evidence that the plaintiff has no interest in the goods in controversy, and find further, that, shortly after the goods were seized, the plaintiff entered into a certain agreement then they should find for defendant, is erroneous, as requiring the finding that plaintiff entered into the agreement, in addition to the finding that he had no title or interest in the goods in controversy, as a condition precedent to the return of a verdict for defendant, but not prejudicial where they found for defendant.

ON FRAUDULENT TITLE.     In an action to recover the possession of goods, where the defendant claims under an execution against the insolvent, and claims that plaintiff's title was collusive and fraudulent, and plaintiff claims by purchase from an assignee for the benefit of creditors, evidence that some of the goods were taken from the insolvent's stock just before the assignment, and returned to it after a sale by the assignee to plaintiff's assignor, with knowledge of both the insolvent and the purchaser, is admissible, as plaintiff obtained title to only such goods as passed through the possession of the assignee and such evidence is also admissible on the issue of fraud.

SAME. In an action to recover possession of a stock of goods levied on by creditors of one who had made an assignment alleged to have been made for the purpose of hindering and delaying insolvent's creditors, where it appeared that insolvent assigned to one who sold under order of court to one who purchased with money advanced in behalf of insolvent, and that such purchaser transferred to plaintiff, who paid no consideration, and took with knowledge of all the facts, and later abandoned all claim to the property, evidence of the insolvent as to the value of the property after it had come into the posssssion of his wife is admissible, in connection with testimony of the purchaser from the assignee of the assignee for the benefit of creditors as to what he had agreed to pay for it.

SAME. In an action to recover possession of personal property claimed by defendant under an execution against one who made an assignment for the benefit of creditors, which defendant claimed was collusive and made for the purpose of delaying creditors, where defendant claimed that plaintiff and his predecessor in title had taken title from the assignee for the benefit of the insolvent, and the evidence disclosed that the purchaser borrowed the money with which he purchased, evidence to show that the lender had knowledge of the plan, and that he really loaned the money to insolvent, is admissible.

DISPOSITION OF REPLEVIED GOODS : *Immateriality.* What became of the property of which plaintiff got possession by virtue of his bond and writ is immaterial, in the trial of the action, where there is no claim the defendant received any part thereof.

*Appeal from Linn District Court.*—HON. WM. G. THOMPSON, Judge.

SATURDAY, OCTOBER 21, 1899.

ACTION to recover possession of specific personal property. Defendant denies plaintiff's ownership or right to possession, and further pleads that his claim thereto is fraudulent and collusive, and made with intent to hinder and defraud the creditors of one Kelty, who it is claimed is the owner of the property. There was a trial to a jury, resulting in a verdict and judgment for defendant, and plaintiff appeals.—*Affirmed.*

*Jamison & Smythe* for appellant.

*Rickel & Crocker* for appellee.

DEEMER, J.—January 13, 1896, one T. A. Kelty made a general assignment of his property to one F. H. Lyman. A part of the property assigned consisted of a stock of liquors. These liquors were covered by a chattel mortgage. Shortly after the assignment the district court of Linn county made an order authorizing the assignee to sell the liquors subject to the chattel mortgage. Pursuant to this order the goods were sold to one William Baehr, who assumed the payment of the mortgage and a landlord's lien upon the stock, and paid in addition the sum of one thousand four hundred and seventy dollars in cash therefor. Baehr borrowed the amount of the cash payment from one Snouffer, and to secure the repayment of the same, executed a chattel mortgage to C. P. Benjamin, trustee. In this mortgage it was provided that the trustee should take possession of the goods, and receive the proceeds of all sales,

until the mortgage indebtedness was fully paid. The sale
was approved by the court, and the proceeds applied to
the satisfaction of claims against the assignor. Plaintiff
claims that he purchased the goods from Baehr, and that
in consideration therefor he agreed to pay all indebtedness
against the stock, of every kind and description, including
the mortgage to Benjamin, trustee, and the further sum
of five hundred dollars. The sale to plaintiff, if one was
made, was brought about by reason of an injunction having
issued against Baehr, restraining him from carrying on the
liquor business, and, as plaintiff's counsel say, "in order
that the liquors might be sold, and the money realized to
pay the indebtedness." Thereafter certain creditors of
Kelty obtained judgments against him, upon which execu-
tions issued, that were placed in the hands of the defendant,
as marshal of the city of Cedar Rapids. These executions
were levied on the stock of liquors, and at the time of
the commencement of this action the goods were in the
possession of the defendant in virtue of his levy thereon.
In his petition, plaintiff alleges that he is the absolute and
unqualified owner of the goods. This the defendant denied,
and he also pleaded that the parties named as having con-
nection with the stock entered into a conspiracy to obtain
possession thereof for the benefit of, and in the interest of,
Kelty, in order that his creditors might be hindered and
defrauded in the collection of their claims; that the money
advanced by Snouffer was in the interest of Kelty, and
the title was taken in the name of Baehr as a part of the
conspiracy; that plaintiff paid nothing for the stock; that he
took the same with full knowledge of the intended fraud,
and paid no consideration therefor; that since the com-
mencement of this action plaintiff and Baehr have surrend-
ered all claim to the property. The jury found specially
that at the time of the commencement of the action plain-
tiff was not the full and unqualified owner of the property.
This statement of the issues and finding of the jury will tend
to simplify the questions presented for our consideration.

I.  Complaint is made of the ruling of the court on a question asked a witness, as to whether he had had any conversation with Kelty about the making of the assignment. It is said that this conversation was had after the assignment, and was therefore immaterial and irrelevant. As the witness simply answered that he had had such a conversation, without stating the details thereof, there was no prejudice; even if the ruling be said to be erroneous.

II.  A witness was permitted to testify, over plaintiff's objections, that, just before the making of the assignment, Kelty carried away and secreted some of the liquors, which were added to the stock after Baehr is said to have purchased it. Both plaintiff and Baehr are shown to have had knowledge of the transaction. Plaintiff claims the ruling was erroneous. We do not agree with him in this contention. It must be remembered that the validity of the assignment is not attacked. If these goods thus spirited away never passed through the assignee, it is difficult to understand how plaintiff obtained title thereto. And, as he must recover on the strength of his own title, any evidence which tends to show that he did not obtain title to the property, or to some part thereof, was properly received. The evidence was also admissible on the issue of fraud tendered by the answer.

III.  Kelty was allowed to testify as to the value of the goods when he obtained possession. This witness testified that he had planned that his wife should get the possession of the stock after the assignment, and it is shown that she did finally obtain possession. The question was directed to the value of the goods of which Kelty obtained possession after the alleged transfer to Gevers. In view of the issues tendered and the claims made by plaintiff as to what he agreed to pay for the goods. this evidence was properly admitted.

IV.   Defendant offered in evidence the mortgage which was on the goods at the time the assignment was made. This mortgage was not attacked by any one, and, as plaintiff and his vendors all claim that they assumed and agreed to pay this lien, its admission was without prejudice.

V.   Plaintiff offered to show what finally became of the stock. As he gave bond and took possession of the property in virtue of his writ of replevin, the final disposition made of the stock was entirely immaterial. There is no claim that defendant received any part thereof. After suit brought, plaintiff could not manufacture evidence as to his purpose in obtaining possession of the property.

VI.   Evidence was adduced, over plaintiff's objections, to show Snouffer's knowledge of the arrangement between plaintiff and Kelty with reference to the stock. No prejudice resulted from this evidence, even if it be said to have been improperly admitted. This is not an attack upon the assignment made by Kelty. The claim is that plaintiff never became the full and unqualified owner of the property. Kelty testified that the arrangement between him, Baehr, and Gevers was that he (Kelty) was to furnish the consideration for the purchase of the stock from the assignee, and that the goods were to be his as soon as the liens against them were discharged. The evidence objected to was for the purpose of showing that Snouffer had full knowledge of the arrangement, and that he (Snouffer) really furnished the money to Kelty. Surely such evidence was admissible.

VII.   Certain of the instructions are excepted to. Before considering these, it is well to refer again to the fact that the jury found specially that at the commencement of the action the plaintiff was not the full and unqualified owner of the property, and also returned a general verdict for defendant, fixing the value of his interest at eight hundred

and seventeen dollars and twenty-two cents, which was the amount of the two executions he held at the time the property was taken under the writ of replevin, with interest. There was ample evidence to support the special finding and the general verdict, and, if the instructions relating to ownership are correct, errors in the instructions relating to fraud were without prejudice, and cannot be relied upon for a reversal. *Hillebrant v. Green,* 93 Iowa, 667; *Newell v. Martin,* 81 Iowa, 238. As plaintiff alleged that he was the absolute and unqualified owner of the property, he was required to prove it. Proof that he held in it trust for Baehr, or for Snouffer, or for Benjamin, the mortgagee, or for Kelty, would not be sufficient. *Kern v. Wilson,* 73 Iowa, 491; *Myers v. Townsend,* 103 Iowa, 569. *Harward v. Davenport,* 105 Iowa, 596, is not in conflict with this rule. In that case plaintiff was the owner, but he had placed a chattel mortgage upon the property. It was held that he was nevertheless the unqualified owner. In this case plaintiff cannot recover because of the fact that he had an interest in the property as trustee. Turning now to the instructions, we find that all those relating to plaintiff's claim of ownership were correct. After instructing fully as to plaintiff's claim to the property, and what he must prove in order to recover, the court charged that if plaintiff simply held the goods for the benefit of Benjamin, trustee, of for J. J. Snouffer, then the verdict should be for defendant. The jury evidently found that plaintiff was not the full and unqualified owner of the goods, and, as we have said, the verdict has support in the evidence. The instructions as to fraud do not, as plaintiff contends, relate to fraud in making the assignment, but to fraud in the subsequent transactions. We quite agree with his counsel in the contention that there is no evidence of fraud in making the assignment, and may further remark that no attack was made upon that instrument by the defendant. We also agree with plaintiff's counsel

in their claim that, if property was fraudulently omitted from the assignment and secreted by Kelty, it would give the defendant no title to the same. But it must be remembered that plaintiff had the laboring oar, and that he must recover on the strength of his own title, and not on the weakness of his adversary's. He cannot claim title to property which never passed through the hands of the assignee, and which was not intended to be covered by the instrument of assignment. Instruction 12 relating to the goods that were taken from the building before the assignment and afterwards returned to the stock, even if erroneous, was not prejudicial, for the reason that it is clearly shown that the verdict was not based upon the proposition announced therein. Instruction No. 16 reads as follows: "If you find from the evidence that at this time the plaintiff has no interest in the goods in controversy, and that shortly after the goods in controversy were seized the plaintiff and one Baehr agreed, in consideration of the payment by T. A. Kelty of the balance due to J. J. Snouffer, of twelve hundred and fifty dollars ($1,250), to release to said Kelty all of their right, title, and interest to the property in controversy, and that the said claim of the said Snouffer had been paid by the said Kelty, then and in that event you will find for the defendant." This instruction is clearly erroneous, but it was wholly without prejudice, for reasons already stated. Moreover, the general verdict in terms finds that defendant was entitled to the possession of the property at the time it was taken from him; that the value of the property was one thousand two hundred and fifty dollars, and the value of defendant's interest therein was eight hundred and seventeen dollars and twenty-two cents. The whole record clearly indicates that the jury found their verdict on the theory that plaintiff never in fact purchased the goods. Lastly, it is insisted that the instructions are inconsistent and contradictory. They are not models, it is true, but, save

as to those already condemned, they seem to be consistent and announce correct rules of law.

The verdict has ample evidence in its support, and we see no reason for interfering with the judgment.— AFFIRMED.