Burton W. Mudge, Appellant, v. Railway Mail Equipment Company, F. H. Burr and T. B. Morris, Appellees.

Corporations: TRANSFER OF STOCK: OWNERSHIP: EVIDENCE. In this action to require a transfer of corporate stock on the books of the corporation, the evidence is held to show that the person from whom complainant received the stock was not the real owner, and that plaintiff was not a purchaser in good faith for value and in the ordinary course of business.

1

Pleadings: PROOF: VARIANCE. Not all variances between pleading and proof are fatal. Thus where plaintiff alleged that a corporation contracted to issue a certain number of shares of stock within two years, in consideration of the performance of certain services, and the proof showed that a different amount of stock was to be issued and within a different period, was not a fatal variance, in the absence of a showing of prejudice.

2

Corporations: SALE OF STOCK: BONA FIDE PURCHASER: ESTOPPEL. Certificates of corporate stock are not subject to the rules afforded for the protection of purchasers of commercial paper, but where a corporation issued its stock and voluntarily delivered it to another, indorsed in blank, it thereby created an apparent title, and cannot thereafter assert its title as against a good faith purchaser. However, a purchaser knowing that the seller is acting in

3

fraud of the rights of the real owner, or having information suffi-
cient to put a reasonably prudent person on inquiry concerning the
facts, is not an innocent purchaser, and the above rule does not
apply. ·

*Appeal from Cass District Court.*—HON. THOMAS ARTHUR,
Judge.

TUESDAY, DECEMBER 15, 1914.

ACTION in equity to compel the transfer upon its books of
shares of stock in defendant corporation. Cross-petition pray-
ing that the proffered certificate be canceled. From a decree
against plaintiff, and in favor of defendant on its cross-peti-
tion, the plaintiff appeals.—*Affirmed.*

*Carr, Carr & Evans* and *B. A. Goodspeed,* for appellant.

*C. B. Clovis* and *W. A. Follett,* for appellees.

WITHROW, J.—1. The Railway Mail Equipment Company
is a corporation organized under the laws of the state of South
Dakota, with an authorized capital of $1,000,000. Defendants
F. H. Burr and T. B. Morris are, respectively, president and
secretary, residing at Atlantic, Iowa, which is the principal
place of business of the corporation. On July 8, 1910, the
corporation issued to F. H. Burr certificate of stock No. 337
for 310,000 shares of its capital stock, of the par value of $1
each. That certificate, assigned in blank, was delivered by
Burr to one Guy Adams, who in July, 1912, assigned it in
blank to Burton W. Mudge, the plaintiff and appellant. As
the alleged owner of the shares of stock represented by the
certificate, Mudge brings this proceeding against the corpora-
tion and its officers, asking for a mandatory injunction to com-
pel the transfer of such shares of stock on the books of the
company to persons designated by him, alleging a prior refusal
upon demand to do so.

The answer of the defendant was a general denial, with a cross-petition, the important averments of which are as follows: That a written contract was entered into between the cross-petitioner and one Guy Adams, under which Adams was to pay all expenses towards securing the adoption by the United States Post Office Department of the patented device for delivering railway mails, which device and the right to use it the corporation was formed to sell; that said Adams was to secure an order from the Post Office Department requiring the use of the device on all railroads carrying mail, and that such adoption was to be secured, and the patented device was to be so used by the railroads, as required by the contract, within two years from its date. As consideration for such services when performed by said Adams he was to receive in full payment for his services certificate No. 337 for 310,000 shares. It is pleaded that the written contract was destroyed by Adams in 1905, and no copy is pleaded. They pleaded that some time after the execution of the contract the said Adams requested of cross-petitioner that the certificate be issued in the name of Burr, and by him assigned in blank and delivered to Adams, the name of Adams to be inserted only when the consideration for it was fully paid, and in the event he failed to comply with his contract the certificate was to be returned to the corporation for cancellation, and that the certificate was issued under those conditions. They pleaded that Adams failed to procure the adoption of the device by the government, and that the consideration for the certificate wholly failed, and that Adams, therefore, had no right nor title in said certificate No. 337, and that the assignment thereafter made by Adams to the plaintiff was wholly void. It is charged that prior to the time of the attempted sale or assignment to Mudge he was informed by Burr, one of the defendants and cross-petitioners, of the contract between the corporation and Adams, and of the failure of Adams to comply with it; that Adams had requested to be released from the contract, and the certificate be canceled on the books of the company;

and that such had been done. The prayer of the cross-petition was that the certificate be canceled, and that it be required to be surrendered for that purpose. A further division of the cross-petition charges a conspiracy between Mudge and Adams to secure control of the corporation, and that the assignment of the certificate was made in pursuance of such wrongful purpose.

The reply to the cross-petition avers a sale of the stock represented by the certificate to the plaintiff for a valuable consideration, without any knowledge that the defendants had or claimed any right or title to it, or that the consideration for it had failed, and that the purchase was made in good faith. An estoppel is pleaded, based upon the averments that the defendant Burr knew that plaintiff had known that Adams was a stockholder, and with such knowledge the said Burr did not inform plaintiff Adams had ceased to be a stockholder; that the stock certificate issued to Burr on its face stated that it was fully paid and nonassessable, and on its back was duly assigned in blank by Burr.

The trial resulted in a decree holding that plaintiff had failed to establish his ownership, that he had knowledge prior to his purchase of the failure of consideration, and ordered the cancellation of the certificate. From this decree the plaintiff appeals. Other shares, being a part of the 310,000 shares covered by the certificate, were in this proceeding the subject of controversy, but from that part of the decree determining the rights in them no appeal is taken.

II. The questions arising are largely of fact. It is satisfactorily shown that a large part of the stock of the corporation was set aside for the purposes of promotion. In 1905 Adams was acting as supervisor of the mails for the Rock Island Railroad, and no doubt because of that connection efforts were made by Burr to interest him in the proposition, and as a result of negotiations between them a contract was entered into. This contract, as testified to, was that the appellee corporation

1. Corporations:
transfer of
stock: owner-
ship: evidence.

agreed to give Adams 400,000 shares of its stock if within six months he secured the adoption by the government of the railway mail exchange device. In September, 1905, the patented article not having been adopted by the government, Burr met Adams at the office of the latter in Chicago. At this time no certificate had been issued to Adams. At the Chicago interview Burr was asked if he had brought the stockbook, and upon stating that he had not Adams showed some annoyance. Upon being told by Burr that he had not complied with the contract, he stated that he knew it, but that he needed the stock to be used in promotion. Returning to his home in Atlantic, a certificate of 400,000 shares was issued in the name of Burr, was assigned in blank by Burr, and sent to Adams by registered mail. This was late in September, 1905. At some time later Burr was in Chicago, met Adams, and as a result of their interview the latter tore up the written contract, giving no, particular reason for so doing. He retained the stock certificate, and, as shown by the evidence, continued his efforts to have the device adopted. In July, 1910, there was further talk between the parties in Chicago. Prior to this time, early in 1910, part of the stock was taken up and issued directly to Adams, at his request, to be used for promotion purposes. In July he held certificate for 310,000 shares. Because of his connection with the Rock Island Railroad, and criticisms and directions received from his superior officer in that company, Adams realized that he must dispose of his stock or quit the road; and to cover up the transaction and yet retain his connection with the project without the knowledge of the railroad company, he requested that the certificate be taken up, and that new ones be issued in the name of Burr. This was done, they were assigned in blank, and left with Adams, and the certificate for 310,000 shares, which was among those so assigned, is the subject of this controversy. At some time later the relations between Burr and Adams were terminated, the contract was unfulfilled, and the certificate for 310,000 shares was canceled on the books, but not upon the certificate

itself, which was held by Adams. Without in further detail setting out the testimony on this branch of the case, it is enough to say that it fully warranted the conclusion of the trial court that the ownership of the stock in controversy was at no time in Adams, but that it was held by him to aid in promotion, with authority to transfer it as such might be needed for that purpose, with title to the part unused to be in him only upon performance of this contract. Adams himself was not a witness in the case, and we are therefore without the assistance which his testimony might give, not only as to this, but as to the other feature, which goes to the validity of the transfer to Mudge.

III. Appellant contends that under the issues upon which the case was tried, as to the main petition and the cross-petition, there is a variance between claim and proof, which prevents the granting of the relief sought by the cross-petition. A written contract between Adams and the defendant was pleaded, which is shown to have been destroyed. It is also urged that the circumstances of its destruction indicated an abandonment of that contract, and that whatever was subsequently done was under an oral agreement, which was not pleaded. This conclusion cannot be sustained under the evidence. While it shows a destruction of the written paper by Adams, other than that there is no showing of a purpose to abandon it; and it does appear that after that time and by agreement the relations between the parties continued on the same terms and for the same purpose as entered into their agreement at the time it was made. That the written statement or agreement was made and acted upon is satisfactorily proven. The parol evidence as to its contents was not of an independent or new contract, but of a prior agreement, the written evidence of which had been destroyed. The written statement or agreement was in some respects different and broader and in more detail as to the terms governing the parties as pleaded than as proven. In the statement of the case we have given the

2. PLEADINGS: proof: variance.

language of the pleading upon that subject. The proof of the agreement, as given by Burr, was that:

The Railway Mail Equipment Company promises to give Guy Adams 400,000 shares of its capital stock in six months if he gets the mail device of the equipment company adopted and put upon the railroads.

The agreement as pleaded fixed two years as the time within which the adoption of the device was to be secured, and the number of shares of stock which were to be paid to him as 310,000. Although these differences constituted a variance between averment and proof, that is not the sole test, for not all variances are fatal. Code, section 3597, provides that:

No variance between the allegations . . . and the proof is to be regarded as material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be shown by proof to the satisfaction of the court, and such proof must also show in what respect he has been so misled.

The rights of the parties in this case do not depend upon whether the contract between the equipment company and Adams was for the transfer of 400,000 shares or 310,000 shares, upon certain conditions, nor whether performance was to be in six months or two years. Under this record the legal effect is the same, as the primary question is whether, at the time Adams received the 310,000 shares, there was the agreement that they were to be held subject to the terms of the original contract, in the purpose for which held, and as to his title to them. In point, see *Harward v. Davenport*, 105 Iowa, 592. Beyond this is the fact that, although the objection as to a variance was urged upon the trial, no showing of prejudice was made as required by the quoted statute.

This conclusion goes as well to the objections made and argued as to the competency of testimony in proof of what appellant charges was a parol contract. Whatever was done

between the parties to that transaction we are satisfied from the record was based upon the original agreement as to rights and duty, and not upon a new agreement.

The consideration for the transfer of the stock to appellant, as testified to by him, was his promissory note for $3,000, due at a fixed date, and which has since been from time to time renewed, but never paid. Plaintiff testified that he had offered to Adams the return of the stock, but Adams would not surrender the note. The certificate of stock at the time of the purchase was in the name of Burr, and on the back was an assignment in blank. Appellant testified that before purchasing he submitted the certificate to his attorneys. At the time of the purchase the appellant was a director in the equipment company, his connection in that relation dating from July 2d, previous to the transfer to him, which was in the latter part of the same month. The occasion of his becoming a director was the execution of a contract between Mudge and the company, who was represented by Burr, under which the Burton W. Mudge Company undertook to furnish funds and organization to place the equipment company on a commercial and paying basis; the consideration for the execution of the contract being 25,000 shares of stock in the equipment company, which were transferred to Mudge.

While recognizing that certificates of stock are not negotiable instruments, and therefore not subject to the same rules which the law affords as a protection to purchasers of commercial paper, the appellant contends that the rule of estoppel applies, and that having issued the certificate of stock, and voluntarily delivered it to another, indorsed in blank, thereby creating *indicia* of ownership, that title cannot be asserted to it as against a person who in good faith and for value purchased it. The proposition stated has approval by the weight of authority, as announced by the courts of this country. 10 Cyc. 631, and cases cited; *Supply Ditch Co. v. Elliott*, 10 Colo. 327 (15 Pac. 691, 3 Am. St. Rep. 586); *Beck-*

**3. CORPORATIONS: sale of stock: bona fide purchaser: estoppel.**

*with v. Galice Co.,* 50 Or. 542 (93 Pac. 453, 16 L. R. A. (N. S.)
723) ; *Brittan v. Bank,* 124 Cal. 282 (57 Pac. 84, 71 Am. St.
Rep. 58). But one who knows that the person purporting to
sell the stock is acting in fraud of the rights of the real owner,
or who has information sufficient to put a reasonable man upon
inquiry as to the fact, is not an innocent purchaser. This rule
is elementary. 10 Cyc. 636.

We must therefore determine from the facts what knowl-
edge, if any, Mudge had at and prior to the time of his pur-
chase of the equities existing in favor of the equipment com-
pany as against Adams in his holding of the stock certificate.
Upon this question we are compelled to rely in the main upon
the testimony of Burr and Mudge, who were the only wit-
nesses who testified upon that subject, applying to their evi-
dence the assistance afforded by some of the circumstances of
the case. The parties Burr and Mudge met about April 12,
1912, with reference to the contract which was subsequently
entered into, and to which we have referred. At that meeting
Adams was mentioned only by way of inquiry of Burr, who
asked Mudge if he was consulting with Adams about making
the contract, to which Mudge replied that he was. At this
time, as testified to by Burr, Mudge asked if Adams was a
stockholder in the company, and was told that he was not, but
that he had been; that because of the objection of his superior
officer he had had his stock transferred to Burr, and that later
Adams withdrew from the company and the stock was can-
celed. At an interview between the parties on May 22d, the
proposed contract between the equipment company and the
Mudge company being yet under consideration, according to
the testimony of Burr, Mudge asked if it would be good busi-
ness for him to continue his friendly relations with Adams.
At a later conversation in August, which was subsequent to
the transfer of the certificate by Adams, Mudge said to Burr,
as testified to by the latter: ''Now you told me at one time
that Adams was not a stockholder. I have in my possession

a certificate for 310,000 shares of the stock which did belong
to Adams''—and claimed that Burr had misrepresented the
matter to him.   After further conversation, as Burr testifies,
Mudge told him that he would return the stock and have noth-
ing more to do with it.

In his testimony Mudge stated that the stock was verbally
assigned to him by Adams, that he gave his note payable in
ninety days for $3,000; which had been renewed, but not paid;
that he did not question the ownership of Adams, and did not
recall that the latter made any positive statement about the
ownership.   He denied that at any of the interviews between
himself and Burr prior to August 8th anything was said as to
whether Adams was or was not a stockholder.   He testified
that some time before purchasing the stock he knew that it
stood in the name of Burr, assigned in blank; that he did not
ask Adams to explain why it was so, as he (Mudge) knew he
did not have any stock in his name because of his connection
with the railroad company; that at the time he became director
he contemplated the purchase of this stock.

The fact that this certificate for 310,000 shares was out-
standing was known to Mudge, as disclosed by his testimony,
for a long time prior to its purchase by him.   He does recall
that at some time during the negotiations he was asked by Burr
if he was consulting Adams about the transaction.   Acquiring
an interest in the corporation, as was then the purpose of their
meeting, and with knowledge of this outstanding certificate,
it was but natural that the apparent large holdings of Adams
would be the subject of conversation.   Burr states that they
were; Mudge denies it.

Both of the parties were present and testified in the lower
court, and opportunity was then had to weigh the testimony of
the witnesses, so nearly in balance, by their demeanor as
witnesses.   This, as has often been held, is a circumstance
which should be considered, where the question is purely one
of fact.   We cannot under this record say that the finding

upon the facts should have been otherwise; indeed, we think it has affirmative support.

The decree is—*Affirmed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.