EDITH M. HYATT, Appellee, v. FIRST NATIONAL BANK OF WILLIAMS et al., Appellants.

**TRUSTS:** Resulting Trusts—Degree of Proof. Before the *legal* title
1 to corporate shares of stock can be overcome and ownership established in another upon the theory of a resulting trust, the proof must be clear, certain, satisfactory, and practically overwhelming.

**CORPORATIONS:** Transfer of Shares—Bona-Fide Purchaser. The
2 purchaser of corporate shares of stock from a certificate holder *who is not the actual owner*, will not be protected in his purchase if, when he purchased, he was chargeable with knowledge of facts and circumstances sufficient to put him on inquiry as to the true owner.

*Appeal from Hamilton District Court.*—H. E. FRY, Judge.

APRIL 4, 1922.

ACTION in equity, to set aside the sale by plaintiff's husband of 16 shares of capital stock of the First National Bank of Williams, Iowa, and to establish the title thereto in the plaintiff. The court held that the plaintiff was entitled to recover as to six shares of stock, and denied the relief sought as to the remaining ten shares. Both parties appeal.—*Affirmed.*

*Burnstedt & Hemingway*, for appellants.

*F. J. Lund*, for appellee.

FAVILLE, J.—I. The plaintiff was married to one N. P. Hyatt in March, 1891. At the time of the marriage, Hyatt was engaged in the practice of law with his father at Webster City, and the parties continued to reside there after the marriage. The plaintiff, at the time of the marriage, was possessed of considerable property in her own right, and received, after the marriage, a substantial income therefrom. The husband was not particularly successful in the practice of law, and, so far as the record shows, he had no property of any appreciable value at the time of the marriage. It appears from the record that, some time after the marriage, he gave up, to a large extent, the ostensible practice of his profession. He became interested in military affairs, and was an officer in the army in the Spanish-American War and in the World War. After retiring from the active practice of law, the plaintiff's husband became manager of an opera house, but apparently received little or no compensation for such services. The expenses of the family appear to have been paid by the plaintiff, and the money she received from time to time from her estate was very largely turned over by her to her husband to invest. Some of this was loaned out and collected by the husband and deposited in his own bank account. It appears that each of the parties kept a bank account, and that the husband at times drew checks upon the plaintiff's account, signing her name, with his initials appended. It also appears that money belonging to the plaintiff was invested by her husband in mortgages, some of which, during the years they were living together, were taken in the name of the plaintiff, and some in the name of the husband. The plaintiff testified that she furnished all of the money for any investments that were made by the husband; that he had no money to invest; and that it all belonged to her. She knew of the manner in which her husband handled the money and securities, and acquiesced therein. At the time, the family relations were agreeable. The plaintiff testified that she was proud of her husband and anxious to contribute to his success.

The matters involved in this case concern shares of stock in the First National Bank of Williams, which were represented by three certificates of stock. The first of these is known in the record as certificate No. 6, and represented ten shares of stock.

The evidence shows that the First National Bank was organized in the year 1900. On October 3d of that year, said certificate No. 6 was issued to N. P. Hyatt. This certificate was assigned to the defendant E. F. King by written assignment thereon, on July 14, 1919. The president of the bank testified that this stock was paid for by N. P. Hyatt in two installments, one by the check of said N. P. Hyatt on the Farmers National Bank, and the other by his check on the Webster City Savings Bank. It is undisputed that, at the time of the organization of the defendant bank, in 1900, N. P. Hyatt became a director therein, and continued as such director for at least ten years; and it also appears that all of the dividends on the said ten shares of stock were credited by said bank to the account of N. P. Hyatt, and that he withdrew the same. He made the usual affidavits required of directors in a national bank as to his ownership of said stock. The plaintiff claims that she purchased and paid for the ten shares of stock represented by certificate No. 6 with her own money, and makes the general statement that she furnished the money for *any* investment that her husband made, and that he had no money of his own with which to make investments. For the purpose of attempting to establish that she furnished the specific funds for the purchase of said ten shares of stock, the plaintiff offered in evidence a check, in the form of a receipt to the Farmers National Bank of Webster City, signed in her name by her husband, and dated April 24, 1900, for $700. Under the evidence, it is fair to assume that this amount of money was drawn from the plaintiff's account on or about said date. There is no evidence in the record, however, that this $700 was used by the plaintiff's husband in payment for any portion of the ten shares of stock. In fact, no such inference is warranted. Other checks of various amounts from $10 to $1,150 were drawn in the same manner by the plaintiff's husband upon her said account at various times covering the period from August 25, 1899, to April 24, 1900. There is no proof as to the purpose for which they were used. The plaintiff also offered in evidence her own check upon the said bank for $600, dated May 21, 1900. It is plaintiff's contention that these two checks represent sums advanced by her to her husband for the purchase of the ten shares of stock. She does not testify that they were used for

such purpose, but seeks to establish the same by inference from the dates and amounts of the checks, and from the general statement that she furnished from her funds the money used by her husband in any investment that he made. There is no proof that the said sums drawn from the bank on these checks were used for the purpose of buying the shares in question, and no attempt is made to trace the proceeds of the said checks into the hands of the bank, or to show what disposition was ever made of them. There was evidence in behalf of the plaintiff showing that she had received several thousand dollars on real estate loans during the year 1900, and that only a portion of the same had been re-loaned. The inference sought to be drawn from this evidence is that a part of these funds might have been used by plaintiff's husband in purchasing the ten shares of stock. The defendants, on the other hand, offered the testimony of the promoter of the bank, to the effect that he did not approach Mr. Hyatt about the organization of the bank until between the 15th and 25th of May, 1900; and he testified that no collection on subscriptions to stock was made as early as April, and that he did not start to collect payments on the stock until in July, 1900. The defendants also offered in evidence statements of the Farmers National Bank of Webster City, showing that a check for $500, drawn by N. P. Hyatt on his own account, was paid at that bank on August 4, 1900. It does not appear who was the payee in this check or what was done with the proceeds. The promoter of the bank testified that the stock was paid for by Mr. Hyatt with two checks, one on the Farmers National Bank and the other on the Webster City Savings Bank. There was offered in evidence the pass book of N. P. Hyatt, showing his account with the Webster City Savings Bank, and said book failed to show either deposits or credits therein for the year 1900.

The foregoing is the substance of the evidence in regard to the purchase of the ten shares of stock represented by certificate No. 6.

The title to said certificate of stock, until the subsequent sale by N. P. Hyatt to the defendant King, remained at all times in N. P. Hyatt. Admittedly, he drew all the dividends thereon.

The plaintiff is seeking to establish a resulting trust by parol evidence. The legal title to said ten shares was in N. P.

Hyatt. Before such legal title can be overcome and ownership
established in the plaintiff upon the theory of a
resulting trust, the proof must be clear, certain,
satisfactory, and practically overwhelming. We
cannot say that it was such in the instant case. *Kelley v. Kelley*,
189 Iowa 311; *Barth v. Severson*, 191 Iowa 770; *Freeborn v.
Servis*, 182 Iowa 1350; *Hayes v. Dean*, 182 Iowa 619; *De France
v. Reeves*, 148 Iowa 348; *Cunningham v. Cunningham*, 125 Iowa
681; *Lillie v. Owen*, 147 Iowa 290; *Malley v. Malley*, 121 Iowa
237; *Murphy v. Hanscome*, 76 Iowa 192; *Trout v. Trout*, 44 Iowa
471. The plaintiff did not carry the burden imposed upon her
by such a degree of satisfactory evidence as would justify a
court in setting aside the legal title and establishing the owner-
ship to said shares in the plaintiff.

1. TRUSTS: result-
ing trusts: de-
gree of proof.

II. There are also involved in this case two other shares
of stock in said bank. The plaintiff testified that she received
certain money from her grandmother's estate, a portion of which
she desired to invest for the benefit of her son Norman. On
January 18, 1905, certificate No. 60, for two shares of the capi-
tal stock of the defendant bank, was issued to "N. P. Hyatt,
guardian." There is no dispute in the record that the money
for the purchase of this stock was furnished by the plaintiff,
as she testified. N. P. Hyatt was never legally appointed guard-
ian of Norman. The plaintiff testified that she thought that
this stock was taken in her son's name, and did not learn that
it was in the name of her husband until some time during 1916.
On the back of said certificate is an assignment in blank, dated
June 4, 1912, and signed "N. P. Hyatt, guardian." On June
5, 1912, N. P. Hyatt received from the bank certificate No. 102,
issued to himself for said two shares. This certificate he sub-
sequently assigned to the defendant King, on July 14, 1919.

The son, now twenty-five years of age, testified that he
claimed no interest in said shares of stock, and that he orally
gave his said interest therein to his mother in 1916; that he
wanted her to have it because she had paid his bills, and he did
not know as he would ever come back, when he went away in
1916. He also testified that he heard his father say to the plain-
tiff at said time that these were her shares, and she could do as
she pleased with them. There is no claim that N. P. Hyatt

ever purchased these shares or claimed the same. In fact, the evidence tends to show an admission on his part that they belonged to the wife, and at least an intention to surrender the same to the plaintiff. Under the undisputed evidence in the case, we are of the opinion that the plaintiff established her ownership in the two shares of stock represented by certificate No. 102. We shall discuss later the question of her right to assert such ownership against the defendant King.

III. Certificate No. 72, for four shares of stock, was issued to N. P. Hyatt under date of April 2, 1907. This stock was in part paid for by a certificate of deposit for $186.30. This certificate of deposit was made payable to N. P. Hyatt, guardian. The president of the bank testified that Mr. Hyatt turned in this certificate and his own check for the difference in payment of these shares of stock. The plaintiff testified that the certificate of deposit in the name of N. P. Hyatt as guardian represented money she received from her grandmother's estate, a part of which was used to pay for the two shares of stock above referred to, and the balance for the purchase of a certificate of deposit. This explains why the certificate was payable to N. P. Hyatt, guardian. Plaintiff also testified: ''I was to pay for two shares purchased for my son Norman, and four shares.'' The evidence in regard to the source of the money used for the purchase of these four shares of stock is convincing that the portion evidenced by the certificate of deposit that had been issued to N. P. Hyatt as guardian was originally furnished by the plaintiff for the benefit of the son. Whether the balance, which was small, was supplied from the personal funds of N. P. Hyatt or from the funds of his wife, the plaintiff, upon which funds he drew checks, is not made clear and certain in the record. N. P. Hyatt recognized that the four shares so purchased were all in the same category, and he had the certificate therefor issued to himself as guardian. This was evidently in pursuance of the previous arrangement with the plaintiff that bank stock was to be purchased with her funds and held in the husband's name as guardian for the benefit of the minor son. The interest the son had in said shares was orally assigned to the plaintiff, with the knowledge and acquiescence of N. P. Hyatt.

It is urged that the evidence shows that only the two shares

previously referred to were turned over by the son to the plaintiff. We do not so construe the evidence. What took place was at a conference between the parties at Des Moines, just prior to the departure of N. P. Hyatt and the son to Brownsville. It is evident that it was the purpose and intent of both N. P. Hyatt and the son to turn over and surrender to plaintiff all interest, real or apparent, that either· of them had in said shares of stock. Shortly thereafter, the certificate of stock, which was then in the possession of the defendant King, was delivered to the plaintiff and placed by her in a safety deposit box for safe-keeping.

We are of the opinion that the evidence is sufficiently clear to establish the plaintiff's title in the said four shares, prior to their transfer to the defendant King. See *Butler v. Farmers Nat. Bank*, 173 Iowa 659.

IV.   It appears from the evidence that in 1916 the plaintiff's husband told her, just before he left for the army, that he had left the bank stock in the hands of the defendant King, whereupon the plaintiff went to see the defendant, and found that the stock was in his hands, and she informed him that she did not wish to have the stock sold. Thereafter, the defendant King delivered the certificates to the plaintiff, who took the same to the Farmers National Bank, and placed them in a safety deposit box. It appears that this box was one used by both the plaintiff and her husband, and both the keys thereto ·were afterwards lost. The stock certificates remained in the safety deposit box until about July 10, 1919, when plaintiff's husband returned from the World War. The plaintiff testified that, in 1916, at the time she got the stock from the defendant King, she told King that she owned the stock and did not want it sold; that King advised her that it was a good investment, and not to dispose of it.

2. CORPORATIONS: transfer of shares: bona-fide purchaser.

On or about the 10th or 11th of July, 1919, after plaintiff's husband had returned from the World War, he caused the lock on the safety deposit box at the Farmers National Bank to be drilled, and the box opened, without the knowledge of the plaintiff, and he took therefrom all of the certificates of stock. About that time, the plaintiff discovered that the certificates had disappeared, and she testified that she went on Saturday, July 11th,

to the defendant King, and asked him if her husband had brought the certificates of stock to him. She testified that at that time she told the defendant that, if her husband did bring the certificates in, she did not want them sold, and that they belonged to her; and that, if she had to raise extra money, she would try to do it in some other way; but that she did not want the said stock sold. She also testified that at that time the defendant King told her he did not know anything about it. On Sunday, July 12th, she had a conversation with her husband, who told her he had taken the certificates of stock, and she told him she did not want them disposed of. She testified that she had no idea, at that time, that her husband contemplated leaving Webster City, and she did nothing further in the matter until after he had left, which was on July 24th. She then had the cashier of one of the banks at Webster City telephone to the Williams bank not to transfer the stock. It appears from the evidence that Colonel Hyatt disappeared on Thursday night, July 24th. On the following day, the plaintiff went to the bank, and discovered that the stock was gone. On the following day, she saw the defendant King, and asked him if her husband had brought the bank stock to him to be sold, and he said that he did not know anything about it. The defendant King lived in Webster City, and was president of another bank—the First National Bank of that city. He also had been the owner, for some eight or ten years, of certain shares of stock in the First National Bank of Williams. He testified that, about the 11th or 12th of July, 1919, the plaintiff came to the bank and had a talk with him about the stock in the Williams bank. His testimony does not agree with that of the plaintiff in regard to this conversation, but he concedes that the talk with her was with regard to the bank stock. He testified that thereafter the plaintiff's husband came to see him, and talked about a sale of the stock, and that he then agreed to purchase it from Hyatt at $215 a share. He says he next saw Hyatt on the 14th of July. He says that the certificates were left with him on the morning of the 11th or 12th, and paid for on the morning of the 14th; that he paid $3,440 for the sixteen shares, and paid for them with a draft, which included this amount and some other items. The draft was made payable to the Nassau County National

Bank of New York, and was sent there at the direction of Colonel Hyatt. The defendant sent the stock to the bank at Williams, to have it transferred. Before this was done, an officer of the bank called on the defendant King and notified him that there were objections to the transfer of said stock, and that the plaintiff claimed to own it. There is evidence tending to show that this was within time for him to have stopped payment on the draft he had sent to New York for this stock, but that he made no attempt to do so. The evidence shows that the defendant King had been a stockholder and director of the defendant bank for many years.

Since we find, as we do, that the plaintiff was the owner of the six shares of stock referred to, and that her husband had no right or authority to sell the same, is the plaintiff, under this record, estopped from asserting her ownership thereof as against the purchaser, King? We are satisfied from the evidence that, from and after 1916, the defendant King knew that the plaintiff was claiming to be the owner of said stock, although it did not stand in her name upon the books of the bank. We find from the evidence that the defendant King was chargeable with knowledge of facts and circumstances sufficient to put him upon inquiry with regard to the true ownership of the said shares of stock, and of the fraud upon said owner by N. P. Hyatt in selling the same. The facts bring the case within the rule of *Mudge v. Railway Mail Equip. Co.*, 167 Iowa 656, 664.

The case presents a situation where the burden was on the defendant King to show good faith, freedom from fraud, and a lack of notice of sufficient circumstances to put him upon inquiry; or, in other words, to establish a claim of estoppel against the plaintiff. We do not think, under the evidence, that he has carried this burden. *Mudge v. Railway Mail Equip. Co.*, supra. See, also, *Farmers & M. State Bank v. Shaffer*, 172 Iowa 173, 174.

As to some of the disputed matters, the evidence is close, but upon the whole record, we are satisfied with the conclusion reached by the trial court.

The decree appealed from is, therefore,—*Affirmed*.

STEVENS, C. J., EVANS and ARTHUR, JJ., concur.