BRIDGET CUNNINGHAM, Appellant, v. LIZZIE A. CUNNINGHAM, ET AL., Appellees.

**Trusts:** EVIDENCE. On an issue as to whether plaintiff's title to the
1 real property in question was that of a trustee, the evidence is considered and held to show that the one through whom defendant claims, furnished from his separate means no part of the purchase money.

**Creation of trust fund.** To impress a fund used in the purchase of
2 property with a trust, it must appear that the beneficiary had title to or an interest in the property from which the fund was derived.

**Trusts:** BURDEN OF PROOF. The burden is upon one seeking to engraft
3 a trust upon an apparently legal title, to establish the same by clear and satisfactory testimony. Evidence considered and held insufficient under this rule.

**Trusts:** QUITCLAIM DEED AS EVIDENCE OF TITLE. On an issue of the
4 beneficial interest in property, the legal title to which is in another, the single fact that the alleged beneficiary quitclaimed his interest to others is not proof that he had an interest therein.

**Sale of trust property:** RIGHTS OF BENEFICIAL OWNER. Where the holder of the legal title to property, in which another has a beneficial interest, sells the same and receives the purchase price, he becomes, not a trustee, but the debtor of the beneficial owner for money had and received to the extent of his interest in the property.

**Quieting title:** DOWER INTEREST: ESTOPPEL. A grantor of property is an unnecessary party to an action to quiet the title thereto, and is estopped from claiming any further interest therein, but his wife who did not join in the conveyance may assert her contingent dower interest in such action.

*Appeal from Webster District Court.*—Hon. J. H. Richards, Judge.

Wednesday, November 23, 1904.

Action in equity to quiet plaintiff's title to certain real estate. There was a decree granting the relief prayed as to all defendants except Lizzie A. Cunningham, who was adjudged to be possessed of a contingent dower right in the property. The plaintiff appeals.— *Reversed.*

*Healy Bros. & Kelleher,* for appellant.

*Kenyon & O'Conner,* for appellees.

Weaver, J.— The land in controversy is described as the north half of section No. 7, township 90, range 30, and the northwest quarter of the southeast quarter of section No. 16 in the same township and range; all being situated in Webster county, Iowa. The legal title to all the land is, and for several years has been, in the plaintiff. On March 2, 1901, while the legal title was in the plaintiff as aforesaid, Thomas A. Cunningham, who was the son of the plaintiff, and the husband of the defendant Lizzie A. Cunningham, made to his brothers and sisters a quitclaim deed of all his right, title, and interest in and to said land, which deed was placed on record. The wife of Thomas A. did not join in the deed. At the date of said deed, so far as the record re-

veals, Thomas A. Cunningham had no title to or interest of any kind in any of the land, and his deed did not appear to convey any title or interest therein to his grantees. Thereafter this action was begun by the plaintiff, who claimed to be the owner of all the land in fee, and alleged that the deed by Thomas A. was void and of no effect, and asked that the cloud thus created upon her title be removed, and the absolute ownership be established and quieted in her. The defendants named in the petition included all the grantees in the quitclaim deed, and also Thomas A. Cunningham and wife, Lizzie A. The last-named defendant appeared and answered, but all others made default, and a decree as prayed was entered against them.

The answer admits that plaintiff held the legal title to the land, and admits the execution and delivery of the quitclaim deed by Thomas A., but denies that he was then without any right or interest in the land. It also avers affirmatively that the north half of section 7, although held in the name of plaintiff, was in fact paid for by Thomas A., and that the legal title was taken in and held by plaintiff as a trustee only for the use and benefit of the said Thomas A. The answer further says that at the date of his execution of the quitclaim deed the said Thomas was not only the equitable owner of the north half of section 7, but, as heir of his deceased father, he had an undivided interest in the northwest quarter of the southeast quarter of section 16. Upon these allegations, said defendant asked to be declared the owner of a contingent dower interest in all of said lands, and that a suitable decree be entered protecting her rights in the premises. After decree had been entered against the defaulting defendants, including Thomas A. Cunningham, plaintiff filed a supplemental pleading setting up the adjudication against the husband as a bar to the wife's right to further assert a dower interest in the land.

The testimony as presented to us is neither clear nor satisfactory. Parties and counsel, also, who are themselves

thoroughly familiar with the web of family and neighbor-

1. TRUSTS: evidence.  hood history involved in litigation, not infrequently forget that this court has no store of private information with which to fill up or round out a meager and disjointed outline of facts. The plaintiff is the only person who testifies from personal knowledge as to the most essential facts. She is unable to read or write, is well advanced in years, and her statements are in some respects confused and uncertain. Gathering up the various threads of the tangled skein as well as we are able, we conclude the truth to be as follows: The plaintiff's husband died in the year 1882, leaving surviving him his widow and ten children, of whom three have since died. The oldest of these children was Thomas A., who had married and entered business for himself before his father's death. On leaving home, his parents gave or advanced to him $1,000, and from that date he contributed nothing in labor or capital to the accumulation of property by the remainder of the family. The portion received by him was a very liberal one, considering the financial ability of his parents, who were then living on rented land and possessed of limited means. He embarked in business on his own account as a hardware merchant, and later was elected county auditor. After retiring from office, a short time before the commencement of this action, he became estranged from his wife, and departed the State insolvent. Others of the plaintiff's children — sons and daughters — remained at home with her upon the farm, and together they accumulated some property, the extent and value of which are not shown. The elder Cunningham held title to no real estate at the time of his death. There is nothing in the record to show what, if any, personal estate was left by him, or, if any, whether it was ever administered upon. It does not even appear whether he died testate or intestate. The family was then living upon a quarter section of land, mentioned in testimony as the "old homestead"; the possession being held under a contract of pur-

chase for $3,600, of which sum but $600 had been paid. The contract was not offered in evidence, and it does not appear whether it was held in the name of the husband or of the wife. The remaining $3,000 of the purchase price was paid by the wife after the husband's death, but no one undertakes to state in whose name the deed was taken. We may infer, however, from the testimony of Mrs. Cunningham, who is the only witness testifying from personal knowledge of the facts, that she took and still holds the title. This land is not included in the present litigation, but the facts relating to its possession and ownership have some bearing upon the issue being tried.

At the time of the elder Cunningham's death, he or his wife also held a contract for the purchase of a quarter section of uncultivated land in Pocahontas county for the agreed price of $1,000, on which but $160 had been paid. As in the other instance, this contract has not been put in evidence, and no one states clearly in whose name it was held. The plaintiff is sometimes made to say that her husband bought the land, and again to say that she herself bought it. Except the first installment of $160, the entire purchase price was paid by the plaintiff after her husband's death. Again, the record is silent as to whom the deed of conveyance was made. Taking the testimony as a whole, it is probable, but by no means certain, that the contract for the land was taken in the name of the husband; but, by reason of his death, and of the subsequent payment of the purchase price by the wife, the deed was made to her. Some years later the plaintiff purchased two separate 40-acre tracts of land in the vicinity of the homestead, one of which is described in the testimony as "a forty in section nine," and the other being the smaller tract described in the pleadings. The title to both tracts was made to the plaintiff. In the year 1896 the plaintiff also took title to the north half of section 7, mentioned in the petition. There is no evidence whatever tending to show that Thomas A. Cunningham furnished or

paid or assisted in paying any part of the purchase price of the homestead, or of the land in Pocahontas' county, or of either of the forty-acre tracts above referred to. The agent of the grantor, in the conveyance of the north half of section 7, testifies that the negotiations for the sale were made with him by Thomas A. Cunningham, from whose hands the cash payment was received, and at whose direction the deed was made to the plaintiff. Were this all, it might be possible to hold that plaintiff's title is that of trustee only, but we think it reasonably certain that the money paid upon this purchase was furnished entirely by the plaintiff. In the first place, the fact that the deed was made to the mother, and that she made the note and mortgage securing the deferred payments, give rise to a strong presumption that she was the beneficial as well as the legal owner. Moreover, there is no testimony tending to show that Thomas A. was at that time possessed of money or property which would enable him to make such an investment. Plaintiff testifies without contradiction that Thomas sent word to her that the land was for sale, and asked if she, or she " and the boys," wished to buy it. According to her undisputed testimony, Thomas A. represented her in negotiating the purchase, and the money paid by him thereon was raised by her, and furnished to him for that purpose. There is an unmistakable tone of sincerity in the testimony of this woman, and, subject only to some evident lapses of memory concerning details, we are convinced that her statements are to be relied upon, and that Thomas A. Cunningham furnished no part of the purchase price of the land.

It is urged on part of the appellee that even if this conclusion be correct, and plaintiff did in fact furnish the money for this purchase, as she says she did, yet this money 2. CREATION OF was itself impressed with a trust in favor of A TRUST FUND. Thomas A., and the title of the land thus acquired must also be held subject to the same trust. This claim is made upon the theory that the money paid by plain-

tiff was a part of the estate, or an accumulation from the estate, of her deceased husband, and was held by her in trust for his heirs, of whom Thomas A. is one. Of the sum of about $10,000 agreed to be paid for the half section of land, a balance of $5,000 is still unpaid, and secured by mortgage on the land. The money for the cash payment was obtained as follows: Michael Cunningham, a son of plaintiff, purchased the Pocahontas quarter section, of which mention has been made, and paid to his mother upon the agreed price $2,000 in money. To this she added $1,800 then on deposit in her name in a local bank. Supplementing this aggregate by borrowing a further sum at the bank, and by selling live stock and grain, she succeeded in making up the sum necessary to complete the purchase. To impress this fund with the alleged trust, we must at least be able to find from the evidence that Thomas A. had title to or interest in this property which had been sold to produce it. This evidence is lacking.

The appellee is seeking to avoid the plaintiff's legal title, and the burden is upon her to make good her claim. It is a familiar rule that the court will not overturn the legal **3. TRUSTS: burden of proof.** title to property, or charge the holder of such title with an implied or resulting trust, save upon clear and satisfactory testimony. A mere preponderance of the evidence is not sufficient. It must be explicit, decisive, and leave the existence of no essential element to conjecture or to remote and uncertain inference. *Murphy v. Hanscome,* 76 Iowa, 194; *Nelson v. Worrall,* 20 Iowa, 470; *Koster v. Miller* 149 Ill. 195 (37 N. E. Rep. 46); *Brinkman v. Sunken,* 174 Mo. Sup. 709 (74 S. W. Rep. 963).

The record before us fails in a marked degree to make the showing this rule requires. Aside from the fact that Thomas A. Cunningham conducted the negotiations for the half section deeded to the mother, and delivered the cash payment to the grantor's agent, there is not the slightest

competent evidence that the purchase was on his own account, or that the title was held in trust for him. On the contrary, the title was made direct to his mother. She gave the note and mortgage to secure the different payments. She has from that day to this exercised dominion and control over the property. She has paid the interest on the mortgage, and, so far as shown, Thomas A. has never asked for or received rent or compensation for the use of the land. On the other hand, the positive testimony of the mother as to the nature of the transaction stands undisputed. That this son — an experienced man of the world — should be intrusted by his illiterate mother with the transaction for her of an important business matter is not strange, and every circumstance shown which throws any light upon the matter is consistent with this theory.

Eliminating, then, the appellee's claim that Thomas A. Cunningham paid the purchase price of the half section of land, and thereby became the real or beneficial owner, let us turn to her alternative claim that said Thomas A. had some share or interest in the purchase price of the land in controversy, derived from or through his deceased father. The appellee, let us again call to mind, is attacking the plaintiff's legal title, and the burden is upon her to show affirmatively that at the date of the quitclaim deed made by Thomas A. Cunningham he had some title, legal or equitable, to the property which he professed to convey. The naked fact that he did quitclaim to his brothers and sisters has no tendency whatever to prove that he had an interest of any kind in the land. It is not enough for appellee to show that the father of Thomas A. Cunningham died many years ago, holding contracts for the conveyance of certain lands, which plaintiff has since occupied, used, or sold, thereby accumulating the means with which the lands now in controversy were produced. She must go further, and show, among other essential things, that upon the death of the father some part of or share in

*4. TRUSTS: quitclaim deed as evidence of title.*

his property passed by his will or by the statute governing the descent of intestate property to the said Thomas A. Here, as we have already noted, the record is wholly blank. Not a single record has been introduced, and no witness undertakes to say whether the father died testate or intestate, or, if intestate, whether administration has ever been had, or, if administration has been had, whether anything was left for distribution to the heirs. The court is not authorized to bridge this gap by any presumption or inference based upon circumstances which are not inconsistent with plaintiff's ownership of the lands to which she holds a clear record title.

Some reliance is placed upon the fact that when the Pocahontas land was sold to Michael Cunningham a quitclaim deed was executed to him by the other members of the family, including Thomas A. and his wife. We have before noticed that the testimony does not disclose in whose name the title stood prior to this conveyance, but there is ground for the inference that it was in the mother. Just why it was thought necessary or proper that other members of the family should unite in the deed does not appear. If we may suppose that the contract of purchase made to the father in his lifetime was of record, this conveyance may have been thought the most efficient and least expensive method of removing any apparent cloud thus created upon the title; but this is, at best, mere conjecture, and we mention it only as an illustrative example of the many reasons, any one of which may have prompted the grantee to require a quitclaim from all his brothers and sisters, even though some or none of them had any actual interest in the property.

But if we assume that Thomas A. Cunningham had some interest in that land, when it was sold and the purchase price was paid to the mother, then she became his debtor, rather than trustee, for moneys had and received, to the extent of his pro rata share in the property. It is shown in evidence that subse-

5. SALE OF TRUST PROPERTY: rights of beneficial owner.

quent to that date plaintiff advanced to her said son, or paid out for his use and benefit, between $4,000 and $5,000, no part of which has ever been repaid. Whether we treat the $1,000 received by Thomas A. Cunningham from his parents to start him in business as a gift or advancement, it remains true that he has since received from the hands of the alleged trustee of his father's estate a sum which far exceeds the share which any court could award in his favor, even upon appellee's own theory of the nature and extent of his rights in the premises. Under such a state of facts, it would be inequitable in the extreme to burden the plaintiff's property with any charge or liability in his favor. That his deserted wife is blameless, and entitled to the protection of the court in every right which the law has given her, is freely granted; but, unless her husband had some legal or equitable title in this land at the date of deed made by him to his brothers and sisters, she never acquired any interest in this property, either inchoate or vested, and she is not wronged by a confirmation of the plaintiff's title.

Counsel has given much attention to the question whether the decree against Thomas A. Cunningham was an adjudication which would bind or estop the appellee from claiming an inchoate right of dower in the land. The conclusion we have reached upon the merits of the case deprives the decision of this question of controlling importance. We are of the opinion, however, that appellant's contention in this respect cannot be sustained.

Thomas A. Cunningham, having made a conveyance of all his alleged interest in the land, was not a necessary party to the action to quiet title; and, if made a party, such conveyance of necessity operated to estop him from setting up any title in himself, but it could not, we think, estop his wife, who did not unite in this conveyance, from asserting and defending her contingent interest, if any she had at the date of the deed.

6. QUIETING TITLE: dower interest; estoppel.

For the reasons stated, the decree of the district court is *reversed*.