JOHN T. KELLEY, Administrator, et al., Appellees, v. M. N. KELLEY, Appellant.

TRUSTS:   Engrafting Trust on Legal Title. A trust will not be engrafted on a legal title, in the absence of very clear and definite supporting testimony. Evidence involving dealings between a mother and son, with intermingling of funds from various sources, reviewed, and held insufficient to establish any trust relation.

*Appeal from Pocahontas District Court.*—JAMES DELAND, Judge.

APRIL 13, 1920.

REHEARING DENIED JULY 6, 1920

ACTION in equity for an accounting. Decree as prayed, and defendant appeals. The facts, so far as material, are stated in the opinion.—*Reversed and remanded*.

*T. F. Lynch* and *Healy & Faville*, for appellant.

*Ralston & Shaw* and *Price & Burnquist*, for appellees.

WEAVER, C. J.—The plaintiffs and defendants are the children and heirs at law of Rhoda Kelley, who died October 9, 1917. The father of the parties, Charles Kelley, died in the year 1890. He was the owner of considerable land, and by his will left a 40-acre tract to each of his 9 children, and a farm of 320 acres to his widow. Before his death, he had also deeded another 80-acre tract to his son, the defendant herein. Charles Kelley was a man of intemperate habits and violent temper, which resulted in breaking up the family home. The defendant, commonly spoken of in the record as Michael, or Mike, went to Kansas, where he took up a homestead. Several other members of the family, including the mother, soon followed him to that state. The mother made her home with Mike, who was unmarried, and remained there until her husband's death, in Iowa, a period of about 2 years. Returning then to Iowa, she resumed her home on the farm, with some of her younger children. In 1895, Mike returned from Kansas, and, being still unmarried, he too made his home with the mother, and cultivated his own land. Just how the home farm was then being operated or cared for does not clearly appear, until about 1898 or 1899, when, the son John and the daughter Mary having married and moved away, Mike took over the general control of the premises, under some express or tacit understanding between him and his mother. The exact nature and scope of that arrangement is the subject of the controversy out of which this litigation has arisen.

The business relations between mother and son, thus initiated in 1899, continued, uninterrupted and apparently without dissension or disagreement, until the year 1917. The mother was then about 82 years of age, and more or less broken down in health and strength. About this time, some of the other children believing or claiming to believe that Mike had obtained or was likely to obtain some undue advantage of the mother with respect to her property rights and interests, and that legal proceedings were required for her protection, John T. Kelley, acting under a power of attorney obtained from their parent, brought an action in her name against Michael, to compel an accounting. The case had been pending but a short time when Mrs. Kelley died, and John, having been appointed administrator of her estate, was substituted as plaintiff. Four of the heirs joined him as plaintiffs, while others or some of them, are impleaded with Michael as defendants.

Stated as briefly as practicable, the issues upon which the case was finally tried are as follows: The plaintiffs allege that Michael and his mother united in a joint adventure or partnership for the operation and use of the lands belonging to both of them as one "common, joint enterprise," and that their business dealings and relations with each other were conducted on that basis until their severance in the year 1917; that Michael took, and at all times had, the active charge and management of the joint enterprise, mingling his mother's personal property with his own; farmed their lands together, mingling the income and profits thereof in a common fund; rented other lands and worked the same for their joint benefit; purchased four additional tracts of land, taking title to one tract in his mother's name, and to the other tracts in his own name, payment for such lands being made from the joint or common fund; and that he also, with said moneys, purchased and paid for certain shares of stock in various corporations, in all of which stock his mother was entitled to an equal share.

The plaintiffs further allege that Michael has never in any manner accounted to his mother or to her administrator or heirs for the profits for her share or interest in the property or profits so acquired by him, and they ask that he be now required to render such account, and that he be decreed to hold the title to one half the lands acquired by him during the alleged partnership in trust for the benefit of the plaintiffs.

The defendant denies that he ever entered into any partnership or joint adventure with his mother with respect to their property or the property of either of them, or in the use thereof, or in the profits or proceeds arising from the use of such property. He admits, however, that he did go into possession, management, and control of his mother's said property in the year 1899, and continued therein until the year 1917; but he alleges that the possession and control of her property were acquired by him, and at all times held and exercised by him, as the tenant of his mother, and not as a partner or joint adventurer. He admits that, during said period, he purchased and acquired the title to about 400 acres of land, and his mother also bought and took title to an additional 80 acres; but alleges that such purchases by them were made in their individual right, and that neither had or acquired any right or interest whatever in the lands bought by the other.

He further alleges that, during said period, he paid to his mother very considerable sums of money, paid debts for and on her account, expended much money, at her request, for the construction of buildings and for the tiling of her lands and making other improvements thereon, making up an aggregate of payments to her equal to or in excess of the rental value of the premises. He also alleges a settlement with his mother in her lifetime, and satisfaction and discharge of their mutual claims and demands.

It should also be said in this connection that Henry Kelley and Charles J. Kelley, sons and heirs of the deceased Rhoda Kelley, do not join in the prosecution of this

suit and file a disclaimer of any right or interest in the
property held or claimed by Michael, and that Martha
Wells, a daughter and admitted heir of the deceased, does
not appear to have been made a party to the litigation,
either as plaintiff or defendant. On trial of these issues,
the district court found for the plaintiffs, and awarded
them relief substantially as prayed. The defendant, Mich-
ael Kelley, appeals.

I. Arguments of counsel have been principally di-
rected to the question whether the evidence satisfactorily
discloses the existence of a partnership or joint enterprise
between the mother and son, as charged in the petition.
For a case of this general nature, involving transactions
covering such a long period of years, the evidence offered
is singularly meager, and very much of that which is pro-
duced is quite indefinite and lacking in substance.

Plaintiffs, at the outset of the trial, called the defend-
ant Michael to the witness stand, and inquired into the
business relations between him and the deceased; and,
except as to matters and conditions thus developed, there
is an entire absence of direct evidence from which the
truth of the controversy can be determined. It is the
theory of counsel for appellee that Michael's own testi-
mony is sufficient to sustain the decree rendered below;
but, when we turn to the record of his testimony, we find
that he distinctly and explicitly denies the existence of
any partnership or joint enterprise. True, appellees are
not necessarily bound by the testimony of Michael; for,
although they made him their witness, it was still com-
petent for them to show, if they could, that the fact is
otherwise than as stated by him. But, in calling him as
a witness, they do vouch for his general character as a
man of truth and veracity, and the burden is upon them to
establish by a preponderance of the evidence, the alleged
partnership or joint venture which he denies. Counsel
say, however, that such conclusion is justified by his own
admissions. Let us see. In the course of the examination,
the appellant conceded that he managed and controlled

the mother's land, cultivated it, raised the crops, and sold and converted them into money or other property; that he, at the same time, was managing and controlling his own land in the same way; and that he mingled the proceeds and profits thereof with the proceeds and profits derived from his mother's land. He kept but a single bank account. He kept no books. When he bought land, he made the first payment from the moneys so accumulated, and later, when he took up his purchase-money mortgages, he paid the debt from the same source. He bought shares of corporate stocks, and, in so far as they are yet paid for, payment has been made from the proceeds of his farming operations. Meanwhile, with his increase in property, his indebtedness has grown in nearly the same ratio, and his outstanding obligations, at the time of the trial, aggregated nearly $100,000.

Counsel lay principal stress on the so-called "common fund" into which went all the earnings and profits of the farming operations, and from which defendant drew indiscriminately, not only to meet current expenses and demands, but for the promotion of all business ventures and transactions in which he, from time to time, engaged; and, because of this manner of doing business, it is argued that mother and son must have been partners or joint adventurers, and that said "fund" and the profits acquired therewith by the defendant are, to the amount of one half thereof, impressed with a trust in his hands for the benefit of the mother and her heirs.

Unfortunately for this theory, the admitted manner of doing the business, the exclusive control of the profits by the defendant, the failure to keep separate accounts or distinct funds, and their use by him in enterprises and investments other than in farms and farming, do not give rise to any necessary inference of a partnership or joint enterprise. They are equally consistent—indeed, much more consistent—with the truth of defendant's contention that he was the tenant on his mother's land, and not her

partner. As tenant, he could rightfully have the entire management and control of the land, and the title to the proceeds of the farm operations would be in him alone. In such case, the law imposed upon him no duty to keep separate accounts or separate funds, or to account there-for to his mother or to the plaintiffs. His obligation to his mother, in such case, was the duty to pay rent. Their business relation was that of debtor and creditor—landlord and tenant. Failure to pay the rent would expose him to an ordinary action for its collection, but not to an equitable demand for an accounting, as for a trust; and, in mingling the proceeds from the use of his mother's land with those from his own land, and in using the combined fund so produced in purchasing property in his own name and right, he wronged no one, nor did a trust in favor of any person result from such action on his part. Except the appellant, no witness pretends to have any knowledge or information as to the terms or conditions on which he took charge of his mother's farm. There is no circumstance shown from which any inference may be drawn that appellant took any advantage of his mother's ignorance or weakness, or that she was not at all times fully advised and consenting to the use he was making of her property. That she was receiving, in some degree at least, an income therefrom, is shown by the fact that, during this period, she purchased and paid for an additional 80 acres of land. The trial court also found that, during the same period, improvements had been made upon her land to the amount of nearly $7,000. Her taxes were paid, and there are still other items of credit claimed by the appellant, upon the correctness of which we shall not undertake to pass, for reasons hereinafter indicated.

As we have before said, the plaintiffs demanded, and the court below decreed, that the lands purchased in the defendant's name, during the period from 1899 to 1917, were obtained by him for the joint benefit of himself and mother. There is no more firmly established rule of law and equity than that the legal title to land held by a

claimant in possession will not be set aside or burdened with an implied or resulting trust except upon clear and satisfactory proof. *Malley v. Malley,* 121 Iowa 237; *Andrew v. Andrew,* 114 Iowa 524; *Murphy v. Hanscome,* 76 Iowa 192. And, if the testimony, when fairly construed, is consistent with any reasonable theory which will allow the legal title to stand, no trust will be declared. Something more than a mere preponderance of the testimony is required. *In re Estate of Mahin,* 161 Iowa 459, 466. The evidence in the record before us falls far short of this recognized measure of proof. The sole item of testimony on which to base the demand for setting aside the deed, or for engrafting a trust upon the title so conveyed, is the statement or admission of the appellant, which is, in substance, as follows: Of the four tracts of land which the decree charges with a trust, he says he made the purchase of the first 120 acres in 1899, which was about the date he went into the possession of his mother's farm, and manifestly before he had received any of the profits of that arrangement. He bought it on a contract, making the initial payment from his own funds, some of which he had received from the sale of his Kansas property. He was already the owner of another 120 acres, to which plaintiffs lay no claim, and, from his income and profits subsequently derived from his own land and the use of his mother's land, he made the subsequent payments. His other purchases were made at a later date, when, according to his story, he was receiving, not only the income from the land leased from his mother, but also from his own 240 acres; and from these combined resources, such purchases were paid for. Such explanation is not inherently improbable or unreasonable. Indeed, he is not charged with the burden of explaining his purchase or the validity of his title. The burden of disturbing that title or imposing upon it any trust is on the plaintiffs, and there is nothing in the defendant's testimony (which constitutes the sole evidence on which plaintiffs rely) which in any manner overcomes

or rebuts the presumption of validity attaching to the conveyances.

We are of the opinion that the plaintiffs have distinctly failed to establish their claim of a partnership or joint adventure between Rhoda Kelley and Michael Kelley, and that the decree sustaining such claim and awarding relief on that basis must be reversed.

II. The cause having been brought and tried in equity, we think that, notwithstanding the reversal of the decree below, the court may properly retain jurisdiction of the proceedings for the complete adjudication of the controversy. The defendant, while conceding his liability to his mother or to her estate for the rent of her lands in his possession, and while contending that such obligation has already been met or discharged, expresses his readiness to make due accounting, if the court finds it has not already been made. The record in this respect is entirely too indefinite, fragmentary, and incomplete to afford any basis of judicial settlement of this question. The cause will, therefore, be remanded to the district court for the trial of this issue, with instructions to the court to permit the parties to file new or amended pleadings with respect thereto, and introduce evidence thereon, but not to reopen or retry the issues considered and passed upon in the first paragraph of this opinion.—*Reversed and remanded.*

LADD, GAYNOR, and STEVENS, JJ., concur.