Patricia M. Gregory, individually and as guardian of Donna Lee and James C. Gregory, minors, appellees, v. Ida Gregory et al., appellants.

No. 49122.

(Reported in 82 N.W.2d 144)

April 3, 1957.

Ralph L. Powers and Henry W. Wormley, both of Des Moines, for appellants.

George D. Sullivan, of Des Moines, for appellees.

LARSON, J.—The sole question for our determination in this appeal is whether under the facts disclosed by the record the defendant Ida Gregory is entitled to impress in her favor a resulting trust upon the real estate in controversy. Plaintiff Patricia M. Gregory is a widow and guardian of Donna Lee and James C. Gregory III, minor issue of her marriage to James C. Gregory, Jr., the record titleholder of said property. James C. Gregory, Jr. had married the plaintiff December 20, 1952, and died September 9, 1955, as a result of an automobile accident. At that time and since December 1954 both parties were residing on the property involved. Shortly thereafter, plaintiff and her

children moved elsewhere and commenced this action for forcible entry and detainer against the defendants Ida Gregory and her daughter, Betty C. Gregory. In their answer the defendants claim James C. Gregory, Jr. took title to this property for and in behalf of Ida Gregory, his mother, and that she furnished the consideration by agreeing to pay the monthly payments on the G. I. loan under which the property was acquired. The trial court found defendants failed to carry their burden of proof, quieted the title to the real estate in plaintiff Patricia M. Gregory and the heirs of James C. Gregory, Jr., and ordered that plaintiffs be placed in immediate possession thereof. Defendants appealed.

I. A resulting trust must arise, if at all, from the state of facts existing at the time the legal title to the property is acquired, and cannot arise from matters coming into existence afterwards, and the person claiming to be the cestui que trust must occupy such position then as will entitle him to be substituted for the grantee. Cotton v. Wood, 25 Iowa 43; Spring v. Spring, 210 Iowa 1124, 229 N.W. 147; Pomeroy's Equity Jurisprudence, Third Ed., Volume 3, page 1992, section 1037; 54 Am. Jur., Trusts, section 204, page 159.

II. One who holds the legal title to land which has been paid for by another holds as trustee of the latter, no gift being intended, and an agreement under which one pays the purchase price of land and takes possession is not within the Statute of Frauds. Tamingo v. Freiberg, 188 Iowa 788, 176 N.W. 791; Spring v. Spring and Cotton v. Wood, both supra. Here the original purchaser was dead. All that he said and did touching this matter must be found in the documents and in the memory of neighbors and relatives. Possession was taken by both parties as the grantee at the time of purchase was single and lived with his parents. With the exception of a letter claimed to have been written by the deceased, all evidence produced by defendants to sustain their contention was parol evidence.

III. The burden rests upon the party claiming the trust to establish by clear, certain, satisfactory and convincing evidence the facts out of which a resulting trust would arise. These facts are (1) the purchase and payment by the claimant;

(2) the intention of the parties in placing the legal title in the alleged trustee; (3) the acknowledgment by him of the trust or his assent thereto, or his failure to dissent after knowledge of claimant's contention.

All of these facts may be shown by parol. When so established by the quantum of proof required the law implies the trust. In re Estate of Mahin, 161 Iowa 459, 143 N.W. 420; Cunningham v. Cunningham, 125 Iowa 681, 101 N.W. 470; Malley v. Malley, 121 Iowa 237, 96 N.W. 751; Luckhart v. Luckhart, 120 Iowa 248, 94 N.W. 461; Culp v. Price, 107 Iowa 133, 77 N.W. 848; Hyatt v. First National Bank of Williams, 193 Iowa 593, 187 N.W. 949; Kelley v. Kelley, 189 Iowa 311, 177 N.W. 45; Freeborn v. Servis, 182 Iowa 1350, 165 N.W. 178; Hayes v. Dean, 182 Iowa 619, 164 N.W. 770; De France v. Reeves, 148 Iowa 348, 125 N.W. 655.

. Much of the evidence, especially documentary evidence, was undisputed. James, then 20 years of age, having just returned from military service in the Navy and being dissatisfied with the property his parents were renting, suggested that they find a more suitable place and he would buy it under his G. I. privilege. Having located such a place, a real-estate salesman showed the property to the young man and his parents. On February 25, 1950, James C. Gregory, Jr., alone made a written offer to buy the property for $5000, and it was duly accepted by the then owners. Young Gregory made application for a G. I. loan, paid and received a receipt for the sum of $20 as an appraisal fee, and later alone signed the mortgage papers and paid the United Federal Savings and Loan Association, as down payment and costs, the sum of $342. On March 20, 1950, he received a warranty deed to the property and, together with his parents, moved into the house thereon. The record further shows he filed verified claims for both homestead exemption and soldiers' exemption, and applied the tax credit to this property. While his mother contends she gave James $100 toward the down payment, this claim is not corroborated in any way, and plaintiff said her husband told her that money came from his discharge pay. This then is the evidence as to who furnished the consideration at the time of the purchase.

Defendant mother, while not signing any papers, contends her agreement to pay the monthly payments, and her performance of that agreement, are sufficient proof of this necessary element. There was no documentary proof of such payments, although both she and her daughter testified the $44 monthly payments were made continuously from April 1950 until December 1954, when James and his wife took over the payments as compensation for living with defendants in that property. It is conceded that James Gregory, Jr., then made the payments until his death. The Loan Company's officer had no records as to who had made the payments prior to December 1954.

As to the intention of the parties in placing the title in James Gregory, Jr., and his acknowledgment of the alleged trust relationship, the defendants rely greatly upon a letter signed by "The Bug", a signature claimed to be that of James C. Gregory, Jr., which was written by James about the time this property was purchased. It stated:

"I've been trying for two weeks now to get squared away on the house I'm buying. I got dam tired of that dump the folks are living in now so I told them to find a place they wanted and I'd get it for them on the G. I. bill, then they can pay on it just like they were paying rent. They finally decided on a place just two blocks from where we used to live. * * * I'm supposed to know by the end of the week if the government will approve it or not. If they do it'll still be a month I guess before we move in."

Obviously this statement standing alone is not conclusive as to James' intention to hold title for and in behalf of his parents. But for clarification and corroboration of this testimony and this letter, defendants also rely upon testimony of various neighbors, who testified that on or about the time of the transaction James, Jr. told several of them "* * * he was getting tired of seeing his folks renting and he was going to buy them a house. * * * He said he would put the down payment down and his mother would make the payments. * * * he was buying it for his mother" and "He told me that he put the down payment on the place and then his parents was going to make the monthly payments and it was to be their property." One said: "He said he was buying it for his folks. He told me that his mother was going

to make the payments on it." Still another said: "I have heard Mr. Gregory say that he had purchased this home and that he was buying it for his parents" and "He said he was buying a home for his folks. He said his Mom worked hard and needs a home to live in for the future, a permanent home." Other statements found in the record which tend to reflect the intention of the titleholder at or about the time the deed was procured, and which may be considered, are si... but enough are set out to give their substance.

True, several months after he purchased the home James, Jr. married and he and his wife left. But when she became ill and died some three months later, he returned. After his marriage to plaintiff on December 20, 1952, they too lived at some four other places before their return in December 1954. In the meantime the father had died and only the defendants lived in the property in controversy.

While it is true the evidence of these facts may be shown by parol, this evidence must be so clear and certain as to convince the mind of the trier of the truth of the facts they hope to establish. Fair inferences are usually not sufficient, especially when contradicted. Cunningham v. Cunningham, Malley v. Malley and Luckhart v. Luckhart, all supra. In Malley v. Malley, 121 Iowa 237, 239, 96 N.W. 751, we said: "But the presumption in favor of the legal title, especially one which has stood unquestioned and undisturbed for many years, is so nearly conclusive that something more than a slight preponderance of the testimony is required to establish a trust."

In In re Estate of Mahin, supra, 161 Iowa 459, 467, 143 N.W. 420, 424, cited by appellants, we said: "The person who contends that the legal title is held in trust must establish his contention by clear and satisfactory evidence. The burden rests upon the party claiming the trust, to establish, by clear and certain evidence, the facts out of which the resulting trust would arise, to wit, the purchase and payment, and the understanding and intention of the parties in placing the legal title in the alleged trustee."

In that case, as here, the original purchaser was dead, but there, as distinguished from the case at bar, claimant's funds

were clearly and easily traced as payment for the property in question. Our difficulty here commences when we fail to find any substantial evidence of the claimant's advanced consideration. It was clearly furnished by James C. Gregory, Jr., the legal title-holder. Only Ida Gregory's contention of her agreement to pay, and her testimony of payment, partially corroborated by her daughter, tending to prove that she paid all the monthly payments on the loan, are furnished as proof of the alleged consideration. The trial court did not feel this sufficient, and we are inclined to agree.

With the exception of the letter introduced, no written documents support the mother's contention as to intent. Plaintiffs contend, with merit, that this letter and most of the statements of the neighbors do no more than establish the fact that young Gregory purchased a house for the use and occupancy of his parents, and had no idea that they claimed title to it. It might well be, as contended by plaintiffs, that James, Jr. expected the moderate rental his folks were paying would be applied to the payments on his loan and the taxes on his property as long as they wished to live in that property. With the exception of a gift of free housing, such an arrangement would not be unfair or unusual. The plaintiff testified she overheard a conversation in 1954 between her husband and the defendant Ida when Ida advised they would move in the spring, saying: "After all, Buddy, you need your house, it is a big house and you need it." The son replied: "Mom, you don't need to, you are welcome here for as long as you want to stay."

As to the statements made by the neighbors, some allowance must be made for the infirmities of memory and the difficulty of recalling and stating accurately conversations had with the deceased. It is true that what one said and did when no motive for falsification existed, when clearly shown, is satisfactory evidence of one's understanding and intention at the time. But credibility of the witnesses also depends, of course, on whether they have any personal interest, motive or purpose to remember so as to shade meanings of words and actions relating to the testimony. Most of the testimony relating to James, Jr.'s intention came from friends and neighbors of the defend-

ants, who clearly placed their own interpretation on the alleged statements of the deceased. An illustration is found in the cross-examination of the witness Harold Dorow who was asked:

"Q. Did he mean, or do you know, was he buying the property in his name with the idea of his parents residing and living in it and he retaining the title to it, is that the idea you got when he said he was going to buy it? A. The idea I got was he was making the down payment and his folks would make the payments and it would be their home, and he never mentioned anything about the title."

Defendants rely greatly upon the testimony of Mrs. M. Kraft, a neighbor, who rented part of the real estate in question to store trucks and vehicles they owned. It appears for three years they paid $6 per month to defendant Ida for this privilege, and she testified: "I said to Bud, 'Here is your money for parking in your yard', and he said, 'Don't give the money to me, it isn't my house, it is my mother's, give it to her.'" Here again contradiction is impossible, but James, Jr. may well have meant his mother was paying the rent for the property and should get that rental back.

While giving due consideration to the testimony of the defendant Ida, her daughter, and the neighbors and friends, testimony not tied to any documentary proof, though for the most part coming from witnesses who stand neither to gain nor lose by the direct operation of a judgment herein, we are not convinced it has the certainty of fact necessary to establish the trust. It has often been said, on the other hand, that if the testimony, when fairly construed, is consistent with any reasonable theory which will allow the legal title to stand, no trust will be declared. Kelley v. Kelley, 189 Iowa 311, 318, 177 N.W. 45, and In re Estate of Mahin, 161 Iowa 459, 143 N.W. 420, both supra.

In the case of Harnagel v. Fett, 215 Iowa 868, 871, 244 N.W. 704, 705, somewhat like the case at bar, we denied the claimed trust, saying: "The burden of proof is upon the one claiming a resulting trust, and in order to establish the same the evidence must be clear, explicit, decisive, satisfactory, convincing, and leave the existence of no essential element to conjecture or to remote and uncertain inference [citing cases]."

In Hyatt v. First National Bank of Williams, supra, 193 Iowa 593, 597, 187 N.W. 949, 951, we said: "Before such legal title can be overcome and ownership established in the plaintiff upon the theory of a resulting trust, the proof must be clear, certain, satisfactory, and practically overwhelming."

The evidence in the record before us falls far short of these recognized measures of proof. The scant and incomplete items of testimony on which to base the demand for setting aside the deed and for engrafting a trust upon the title so conveyed are (1) the letter, (2) the alleged statements to friends and neighbors, (3) the payment of $44 per month claimed to have been made by or for the mother, and (4) possession over the period of years. We are left little more than an inference of young Gregory's intent to take title to the property for his mother at the time of purchase, with only an agreement to pay the consideration like rent and thus get her the advantage of a cheap loan. It is not enough. It seems more likely that he bought the place and intended to permit his parents to occupy it indefinitely as their home, and they were to make payments on it instead of rent. The gift was use, not title. Kelley v. Kelley, Hayes v. Dean, Freeborn v. Servis, and De France v. Reeves, all supra; Webb v. Arterburn, 246 Iowa 363, 67 N.W.2d 504.

We are convinced the testimony, when fairly construed, is consistent with a reasonable theory which will allow the legal title to stand. Kelley v. Kelley, supra.

It is doubtful the defendant mother would have permitted her son to falsely represent to the United States Government that he, not she, was the buyer of that property in order to obtain the otherwise unobtainable G. I. loan. It is unlikely that she would permit her son to swear falsely on affidavits of ownership to obtain veteran and homestead exemptions. We prefer to believe they were not made falsely. We also find it unusual, to say the least, for a trustee to subsequently borrow large sums to improve the property of his cestui que such as was shown herein. It is undisputed that James, Jr., and plaintiff, his wife, obtained F. H. A. funds in the sums of $431.18 and $488.66 to improve this property in 1954, to wit, installing a new furnace, and repairing the porch, foundation, and siding on the house,

Plaintiff stated her husband told her it was his house, and therefore she signed the notes and made payments on those loans. Defendants did not sign these notes and made no payments on them at any time.

Apparently no real effort to get the property was made by defendants during James, Jr.'s lifetime, although Ida Gregory alone testified she spoke to him about it and he said: " 'Don't worry about it, Mom, I'll take good care of it.' " We held in Hayes v. Dean, supra, 182 Iowa 619, 164 N.W. 770, claims for resulting trust arising out of alleged payments by one with title taken in another, asserted for the first time after the death of the legal titleholder should be scanned with great scrutiny. Ida Gregory here made her first open ownership contention after plaintiffs' action for immediate possession was commenced.

It is quite reasonable from the record to conclude that the son bought the place intending it to be a home for his parents as long as they desired, and that they agreed to pay the monthly payments, which amounted to no more than rent they had to pay elsewhere. The son, on the other hand, borrowed to improve his property and intended to reside there with his family and, when he took possession in 1954, relieved his mother of paying any more rent for the property.

Needless to say, we have directed our specific attention to corroborating circumstances pro and con, and after careful consideration of all the evidence, and after weighing the equities, we agree with the trial court and conclude that defendants have failed to produce the quantum of proof necessary to establish their alleged title or interest in and to the property in controversy. The most reasonable explanation sustains the trial court's conclusion that ownership and title were in plaintiff and the children of James C. Gregory, Jr.

■ IV. There was some contention as to the competency of the testimony offered and the sufficiency of the objections, but as it is doubtful any objections were directed to the competency of the witnesses to testify to the matters inquired into, we so treated them herein. The trial court, we presume, disregarded all testimony which was vulnerable to proper objections made, if any, and its conclusion was based solely upon the admissible

evidence. The court is not required to accept as a verity uncontradicted testimony, but might well scrutinize closely such testimony as to its credibility, taking into consideration all the circumstances throwing light thereon, such as the interest of the witnesses, remote or otherwise. Benson v. Custer, 236 Iowa 345, 17 N.W.2d 889; Orr v. Graybill, 237 Iowa 628, 23 N.W.2d 414; Gilmer v. Neuenswander, 238 Iowa 502, 28 N.W.2d 43.

V. Plaintiff, the widow of James C. Gregory, Jr., and guardian of his heirs, of course was not required, in making a prima-facie case for quieting title, to negative the existence of any alleged trust in favor of her mother-in-law or her heirs. Hayes v. Dean, supra, 182 Iowa 619, 164 N.W. 770. Her documentary evidence was sufficient.

We conclude the judgment and decree of the trial court that plaintiffs were entitled to immediate possession of the real estate and that defendants Ida Gregory and Betty C. Gregory have no right, title or interest therein was correct and must be affirmed.—Affirmed.

All JUSTICES concur.