Clifton G. MOSER and Caryls C. Moser, Appellees,

v.

THORP SALES CORPORATION, Thorp Credit, Inc., Hoth and Willman Real Estate and Auctions, Col. Chuck Hoth, Col. Gay Oelke, Marguerite Schmitt, Richard Schmitt, Thorp Finance Corporation of Wisconsin, ITT Thorp Corporation, Lola Jean Woods and Donald J. Woods, The Federal Land Bank of Omaha, and Gary Woods, Intervenor, Appellants.

No. 68451.

Supreme Court of Iowa.

June 15, 1983.

John D. Gnagy of Ehrhardt & Gnagy, Elkader, for appellant The Federal Land Bank of Omaha.

Larry F. Woods, Oelwein, and Frederick G. White, Waterloo, for appellants Lola Jean Woods and Donald J. Woods.

Kathleen Neylan and Kevin C. Neylan, of Neylan Law Office, Elkader, for appellees.

Considered by HARRIS, P.J., and McCORMICK, SCHULTZ, CARTER, and WOLLE, JJ.

WOLLE, Justice.

Twice before this court has reviewed *de novo* the complicated circumstances which have embroiled in controversy and litigation these multiple parties and the 285-acre Clayton County farm in which they have claimed an interest. The facts of the first appeal appear in *Moser v. Thorp Sales Corp.*, 256 N.W.2d 900 (Iowa 1977) (*Moser* I), while other detailed facts and our resolution of most issues appear in *Moser v. Thorp Sales Corp.*, 312 N.W.2d 881 (Iowa 1981) (*Moser* II).

The issues now before us concern the parties' entitlement to a fund (the Fund) of $45,479.14 plus accumulated interest which

has been held by the clerk of court since it was paid by Mosers following our decision in *Moser* I. In *Moser* II, we expressed no opinion as to who should have priority of payment from the Fund, though we did hold that the Fund does not represent an amount required for redemption, as had been implied in *Moser* I. *See* 256 N.W.2d at 912. We remanded the issue of priority of payment to the trial court for decision on "the existing record and such additional evidence as may be appropriate," with the parties "allowed to amend their pleadings to allege any additional matters that may have occurred since the last trial that may bear on entitlement to the [F]und." 312 N.W.2d at 898. The Fund now includes over $16,000 in interest which has accumulated by reason of the parties' wise decision to have the principal amount of $45,479.14 fully invested during the pendency of this case.

Following remand, the trial court first held a pretrial conference and was informed by the parties that there was no remaining evidentiary contest of consequence. The parties agreed and the court ·ordered that the remaining issues be submitted by written brief and argument. The court received briefs and decided the issues now before us in a several-paragraph order and decree.

First, the trial court found that the Fund held by the clerk of court constituted Mosers' payment of the purchase price of $42,180 under their contract with Schmitts to purchase the farm. Mosers were therefore awarded a refund of their $3,299.14 overpayment ($45,479.14 less $42,180) plus interest earned on the $3,299.14 while it was in the hands of the clerk.

Second, the trial court awarded Mosers from the Fund the sum of $18,827.41, plus interest on that amount, as an offset· of Schmitts' indebtedness to Mosers, in effect treating that debt for rent as an abatement of the purchase price for the farm.

Next, the trial court determined that court costs of $49.12 charged to Mosers from the appeal in *Moser* II should be paid from Mosers' share of the Fund, and that other court costs should be taxed to Woods and the Federal Land Bank (FLB), with those costs being paid from the Fund.

The trial court denied the Mosers' claim for attorneys fees, deciding that the defendants' conduct was not such as to justify such an award "in view of the Supreme Court's appraisal thereof," quoting the following language from *Moser* II:

> The reasons for the rather stilted form of the transfer are unclear and we hesitate to imply illegality or fraud on the part of any of the parties.

*Id.*

Finally the court denied the FLB claim against the Fund, finding that it had neither sought nor obtained any judgment against any parties herein and that its conduct, like that of the Woods, deprived it of the status of a good faith mortgagee.

The trial court's decree provided that the clerk of court should first pay court costs, including witness and referee fees, and then pay the balance in the fund to Mosers, with Mosers' judgment against Schmitts satisfied in full and Mosers' judgment against Woods satisfied in the remaining amount of $32,915.37. (Because Woods had already paid the Mosers' judgment, the net effect of the decree was to provide payment to Woods of the sum of $32,915.37 as the balance left in the Fund. Mosers have remitted that amount to Woods.)

The parties' appeals and cross-appeals from the trial court's decree raise several issues, some of which are new and some of which have already been decided in *Moser* I and *Moser* II. We here address those issues which have not previously been decided.

I. *Appeal of Woods and FLB.*

A. Defendants Woods and FLB contend that the Mosers ought not be allowed to receive payment from the Fund to satisfy their judgment against the Schmitts, because the Schmitts and their mortgagees (Thorp Sales Corporation, Thorp Credit, Inc., Thorp Finance Corp. of Wisconsin and ITT Thorp Corp.) had conveyed their interest in the farm to Woods

before the Fund was created. Woods and FLB argue that they thereby acquired legal title to the real estate and were entitled to the proceeds of Schmitts' sale to Mosers, proceeds which are now represented by the Fund. Defendants' contention might have merit if the Mosers' judgment against Schmitts was unrelated to their purchase of the farm. That judgment, however, was for rent for the property for the years 1972 to 1974 when Schmitts were in possession of the farm. *Moser* II, 312 N.W.2d at 901. The Fund does represent Mosers payment of the purchase price to Schmitts, but Mosers have received less than complete ownership and use of the farm since their effective date of January 15, 1972. *Moser* II, 312 N.W.2d at 900. The trial court correctly found that Mosers are equitably entitled to receive back, as a priority offset against the purchase-money Fund, the rentals for 1972 to 1974 which are now represented by their judgment against Schmitts. In an action for specific performance, the vendee may compel the vendor to convey his defective title or deficient estate and have a just abatement out of the purchase price for the deficiency of title, quantity or quality of the estate to compensate for the vendor's failure to perform the contract in full. *Shell Oil Co. v. Kelinson*, 158 N.W.2d 724, 730 (Iowa 1968).

B. Woods also raise a question of "standing," contending that Schmitts make no claim to the Fund and have no standing, so Mosers ought not obtain funds in their place. Mosers, however, have no "standing" problem. The trial court correctly allowed Mosers to receive from the Fund the Schmitts' rentals which, in effect, abate by that amount what Mosers were required to pay to Schmitts as vendors for the lesser quality of estate which Schmitts actually conveyed.

█ C. Defendant FLB also contends that it is entitled to priority as a purchase money mortgagee because funds provided by it were directly used by Woods to purchase Schmitts' interest in the farm. The FLB argues that the lien of its 1975 mortgage attaches to the Fund (which replaced the farm as the bank's security interest) and takes priority over the later judgments obtained by Mosers against Schmitts and Woods. The trial court properly denied the FLB claim to priority. The record supports the court's finding that the Land Bank "participated fully and understandingly with the Defendants Woods in their actions"; conduct which deprived Woods of bona fide purchaser status has the same effect on the status of FLB as mortgagee. *Moser* II, 312 N.W.2d at 894. FLB contends that a resulting or constructive trust for its benefit should be imposed on the Fund, but it has failed to establish by the requisite clear and convincing evidence the facts out of which such a trust would arise. *See James v. James*, 252 Iowa 326, 330, 105 N.W.2d 498, 500 (1960); *Gregory v. Gregory*, 248 Iowa 672, 674, 82 N.W.2d 144, 146 (1957); *Westcott v. Westcott*, 259 N.W.2d 545, 546–47 (Iowa App.1977). Moreover, the trial court correctly found that FLB had neither sought nor obtained any judgment against the parties entitled to the Fund. The Land Bank has demonstrated neither an equitable nor legal basis for its claim to part of the Fund.

II. *Cross appeal of Mosers.*

Mosers' appeal raises two questions that have not specifically been answered in *Moser* I or *Moser* II: (1) whether they are entitled to attorneys fees and expert witness fees; and (2) whether they are entitled to all of the interest which the Fund has generated. The district court denied those claims and we affirm its rulings.

A. Mosers base their claim to attorneys fees both on statutory provisions for taxing attorneys fees as costs and on a common law theory. There are several exceptions to the general rule that attorney fees are not recoverable from opposing parties, but none are applicable to the facts in this case.

█ Mosers initially argued that their offer to purchase from Schmitts provided for payment of attorneys fees as a part of the court costs, and they relied upon the statutory exceptions found in Iowa Code section 625.22 (1981). They failed, however, to file

the affidavit required by Iowa Code section 625.24, and we have consistently held that such an affidavit is a prerequisite to taxation of attorneys fees as costs. *Holden v. Voelker,* 228 Iowa 589, 591, 293 N.W. 32, 32 (1940); *Temple Lumber Co. v. Lattner,* 211 Iowa 465, 469, 233 N.W. 522, 524 (1930).

■ In their reply brief Mosers assert that the "heart" of their claim for attorneys fees is based on common law, not on statutory exceptions providing for assessment of attorneys fees as court costs. The cases they rely upon, however, are inapposite. Some are based either on findings during the trial of conduct "tinctured with legal malice" [*Kuiken v. Garrett,* 243 Iowa 785, 800, 51 N.W.2d 149, 158 (1952)] or "connivance . . . to harass and injure" the aggrieved person [*Harmont v. Sullivan,* 128 Iowa 309, 317, 103 N.W. 951, 954 (1905)]. Others are based on distinguishable circumstances under which one party has by his tort or breach of contract forced another to become involved in third-party litigation [*Turner v. Zip Motors, Inc.,* 245 Iowa 1091, 1100–01, 65 N.W.2d 427, 432–33 (1954)].

The record before the court when *Moser* II was decided did not provide a basis for Mosers to recover attorneys fees. Mosers offered no additional evidence to support their claim before entry of the decree denying their claim for attorneys fees. Neither does the record show the trial court improperly denied their request for expert witness fees. We are not persuaded that this case should again be remanded for further trial on that or any other issue, bearing in mind that the parties informed the court at the pretrial conference that no evidentiary contest of consequence remained to be heard.

B. Mosers also contend that they, rather than the Woods, are entitled to the enhanced interest of $16,000 earned by reason of the investment of the Fund monies at a higher rate of interest than the legal rate allowed on judgments. They contend that they were required to deposit with the clerk of court a greater sum than was owed to the Schmitts for the abated purchase price, due to defendants' wrongful conduct, and that defendants are unjustly enriched by the trial court's decree which credited Woods with that additional interest.

■ In *Moser* II this court concluded that the trial court had correctly computed interest on the damages for rent owed by Schmitts and Woods to Mosers. 312 N.W.2d at 901. The trial court used the same system of computing interest in determining correctly that Mosers should receive from the Fund both their $3,299.14 overpayment of the purchase price, with interest, and the $18,827.41 judgment against Schmitts for rentals, with interest. The trial court's determination that Mosers were entitled to those principal amounts from the Fund were the equivalent of money judgments in Mosers' favor, and the trial court properly determined that those amounts should bear interest at the rate applicable to judgments rather than an enhanced rate of interest. With the Mosers' net purchase price thereby established and overpayment with interest refunded, Mosers have no further claim to the Fund. The Woods as assignees of Schmitts are entitled to the balance of the Fund, including the actual interest it has earned.

In summary, we affirm the decree of the trial court which, as a court of equity, has proceeded to "round out the whole circle of the controversy" [71 Am.Jur.2d, *Specific Performance* § 210, at 268 (1973)] and adjusted the equities as though specific performance had been accomplished and title finally vested in the Mosers as of the date originally contemplated by the sales contract, January 15, 1972. 312 N.W.2d at 900. The trial court's decree determining entitlement to the Funds held by the clerk of court is consistent with our previous decisions and supported by the credible evidence in the lengthy and complex record before us.

Because the trial court's calculations of interest were made to April 6, 1982, the date of its decree, the clerk of court shall update each such interest calculation to the date that procedendo issues, using the same system and rates as the trial court used. The clerk of court shall then promptly make distribution of the Fund to each party or

other person identified as a recipient in the trial court's decree. Costs of this appeal shall be taxed one third to Mosers, one third to FLB and one third to Woods.

AFFIRMED.